## Redding, Appellant, *v.* Esplen Borough.

*Municipalities—Boroughs—Municipal debt—Constitutional law—Sewers.*

A borough entered into a contract for the construction of a sewer at a time when it had no actual outstanding obligations or actual indebtedness except a floating debt much below the two per cent constitutional limit. The contract itself imposed no liability upon the borough for the construction of the sewer, but viewers subsequently appointed assessed a portion of the damages against the borough. There was no evidence that this sum was not payable and actually paid by the borough out of current funds. Prior to the making of the sewer contract ordinances had been passed authorizing issues of bonds for various purposes, among others to pay off the floating indebtedness. The amount of these bonds, together with the amount of the sewer contract, amounted to more than the constitutional limit. No bonds, however, were actually issued under these ordinances until after

the sewer contract was made, and no purchases of property were made, nor work done for the payment for which the bonds were authorized until long after the sewer contract was made, and, indeed, until the construction of the sewer was almost completed. *Held*, that the sewer contract did not involve an increase of debt beyond the constitutional limit, and that the contractors were entitled to their money.

Argued Oct. 30, 1903. Appeal, No. 78, Oct. T., 1903, by plaintiffs, from decree of C. P. No. 3, Allegheny County, Feb. T., 1902, No. 528, dismissing bill in equity in case of P. L. Redding, S. J. Mitchell and James Hunter v. Borough of Esplen, D. K. McGunnigle, Burgess, L. J. Dietrich, Robert Grey, Francis Booth, Sr., W. S. McClatchey, Thomas Milligan, John Landefeld, Oliver Sutherland, Council and Levy Diulus, Frank Diulus, Nicolee Diulus, trading as Diulus Brothers and the First National Bank of McKee's Rocks, Pa. . Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction to restrain payments on account of a sewer contract. Before KENNEDY, P. J.

From the record it appeared on July 12, 1900, an ordinance of the borough of Esplen authorized the construction of a sewer on Ridge street. On August 25, 1900, the borough entered into a contract with Diulus Brothers to build the sewer. At the date of the ordinance and at the date of the contract the only indebtedness of the borough was a floating debt of about $7,500. On July 19, 1900, three ordinances were passed authorizing the issue of bonds (No. 62), to fund the floating debt (No. 63), to provide a fund for the purchase of lands for municipal buildings, and (No. 64) for the purchase of fire apparatus. No. 62 was amended by a later ordinance, No. 66 of September 19, 1900. The bonds under all three of the ordinances were issued on October 23. No purchases of property were made nor work done for the payment for which the bonds were authorized, until long after the contract for the sewer was made, and until the construction of the same was almost completed.

KENNEDY, P. J., filed an opinion which was in part as follows : At the time of the passage of the ordinance authorizing the

construction of the sewer, the total indebtedness of the borough of Esplen was the floating indebtedness thereof, amounting to the sum of $7,500. It also appears that at the time the contract for the construction of the sewer was entered into with the defendants, Diulus Brothers, no bonds had been issued under the ordinances authorizing the same, nor had any contracts been made for the purchase of property and the erection of the municipal building or the purchase of lots or the fire apparatus mentioned in the ordinances recited in the foregoing statement of facts, and that there were no actual outstanding obligations of the said borough or actual indebtedness, except the floating debt above named of $7,500, for the payment of which bonds were authorized by the ordinance numbered 62 of July 16, 1900, which was amended by the ordinance numbered 66 of September 19, 1900, and the bonds were subsequently, October 23, actually issued under the amended ordinance, and the bonds authorized by the other ordinances, numbered 63 and 64, were also issued at the same time, and the floating indebtedness of the borough was paid generally out of the funds realized from the sale of the bonds. The issuing of the bonds under the ordinance numbered 62 for the payment of the floating debt of the borough did not increase its indebtedness, as they were for the payment of the indebtedness already in existence, and adding to this indebtedness the cost of the construction of the sewer, the contract for which was made August 25, 1900, the constitutional limit of indebtedness of the borough would not be reached. When, therefore, the contractor for the construction of the sewer was about to enter into his contract, an investigation by him would have shown an actual indebtedness of only $7,500, the floating debt of the borough mentioned, and hence he was fully justified in making the contract, and must be protected therein. Nor did it appear then that any liability for the construction of the sewer would be imposed upon the borough, the supposition being that assessments upon the abutting property would be sufficient for the payment of the same.

In O'Malley *v.* Olyphant Borough, 198 Pa. 525, Mr. Justice MESTREZAT, delivering the opinion of the court, says: "Neither of these" (the ordinance and the contract) "imposes an absolute liability on the borough for the expense of the sewer."

As is shown in this case, whether or not any liability for the cost of the construction of the sewer should be imposed upon the said borough could not be ascertained until the viewers appointed for the making of assessments therefor should render their report.

This, then leads us to the consideration of the question: When does the liability of the borough in this case for the bonds authorized by the ordinances, numbered 63 and 64, attach? Is the indebtedness incurred by the borough when the ordinances were passed on July 19, 1900, or is the indebtedness only created when the bonds were issued, October 23, 1900? If the liability was created when the ordinances were passed, then the amount of the bonds authorized to be issued constituted an indebtedness equal to about two per cent of the assessed valuation of the property of the borough, and any claim or liability for the cost of the construction of the sewer added thereto would exceed the constitutional limit of indebtedness. But was the indebtedness created by the passage of the ordinances? If, as stated in O'Malley v. Olyphant Borough, supra, neither the ordinances nor the contract imposed absolute liability on the borough for the expense of the sewer, how can it be said that any liability is imposed upon the borough by the ordinance alone authorizing the issue of bonds? It may be that the bonds will never be issued, or that only a portion of them will be issued. Plaintiffs seem to rely mainly for the maintenance of their position upon the authority of O'Malley v. Olyphant Borough, supra, but in reality that seems to us to be an authority against such a position. If the indebtedness was created by the passage of the ordinance, and delay for any reason should occur before the bonds should be issued, the municipality would be utterly helpless to, in the meantime, construct any improvements or incur any indebtedness whatever. Surely it could not be contemplated that all work must stop until the bonds authorized by the ordinance are actually issued. And we must again call attention to the fact that no purchases of property were made or work done for the payment of which the bonds were authorized by ordinances numbered 63 and 64 until long after the contract for the sewer was made, and, indeed, until the construction of the same was almost completed. It would be

a harsh construction that would make the ordinance itself alone an indebtedness to defeat the claim of the contractors for the construction of the sewer who have in good faith performed their contract.   In any aspect of the case, as we view it, it cannot be said that the contract for the construction of the sewer reached a liability at the time which exceeds the constitutional limit of indebtedness to be undertaken by the borough.

The court entered a decree dismissing the bill.

*Error assigned* was decree dismissing the bill.

*Charles A. O'Brien*, with him *Buckley & Hegner* and *Chas. W. Ashley*, for appellants.

*William A. Jordan*, with him *Stone & Stone*, for appellees.

PER CURIAM, November 9, 1903 :

The learned judge below found that at the time of the making of the contract for the sewer by Diulus Brothers, the indebtedness of the borough was not in excess of the constitutional limit, and the decree must be affirmed on that portion of his opinion and conclusions.

It is true that the report of the viewers did not assess the whole cost of the sewers on the abutting properties, but charged $1,066.89 of it upon the borough.   But there was no evidence that that sum was not payable and actually paid by the borough out of current funds.

Decree affirmed with costs.