CASE 55.—ACTION BY ED FROST AND OTHERS AGAINST THE CITY OF CENTRAL CITY AND OTHERS TO ENJOIN THE ISSUANCE OF SCHOOL BONDS.— June 18, 1909.

## Frost, &c. v. Central City, &c.

Appeal from Muhlenberg Circuit Court.

W. P. SANDIDGE, Circuit Judge.

Demurrer to petition sustained, plaintiff appeals. —Affirmed.

1. Municipal Corporations—Fiscal Management—Creation of Indebtedness—Elections—Secret Ballot.—An election authorized by the general council of a city of the fourth class to submit the question of whether the city should issue bonds to raise money for the erection of common school buildings was not held under any statutes relating to common schools, but was a municipal election held under Ky. St. Sec. 3490, subsec. 34, authorizing cities of the fourth class to issue municipal bonds for municipal purposes, and providing that the city council, if they deem it necessary to incur a debt, shall give notice of an election to determine whether the debt shall be incurred, and, if two-thirds of the qualified electors vote therefor, shall provide by ordinance for creating the

Frost, &c. v. Central City, &c.

debt, so that the election was properly held by secret ballot as provided by the Constitution even if elections relating to common public schools must be held viva voce.

2.  Municipal Corporations—Fiscal Management—Issuance of Bonds—"Municipal Purposes."—The erection of a school building was a "municipal purpose" for which the city was authorized to issue bonds.

3.  Municipal Corporations—Fiscal Management—Bonds—Elections.—That the issuance of school bonds was carried by two-thirds of the votes cast upon that particular question in an election held under Ky. St. Sec. 3490, subsec. 34, authorizing the creation of any indebtedness for municipal purposes if two-thirds of the qualified voters voted in favor of incurring the indebtedness, was sufficient, even though the proposition did not receive two-thirds of the votes cast upon other questions submitted at the same election.

4.  Municipal Corporations—Fiscal Management—Indebtedness— Limitations on Indebtedness.—It is sufficient under Const. Sec. 158, limiting the indebtedness of fourth class cities to 5 per cent. of the assessed value of the property, that the indebtedness does not exceed the constitutional limitation at the time of issuance and sale of the bonds, and the fact that the existing indebtedness, together with that created by the bonds, exceeded the limitation at the time of the election to authorize the issuance of the bonds, would not make them invalid; the indebtedness not being created until the bonds were sold.

5.  Constitutional Law—Validity of Statutory Provisions—Contravening Constitution.—If the Constitution and statutes conflict as to what shall constitute a majority in a municipal election, the Constitution controls.

J. K. FREEMAN, Jr., for appellants.

POINTS AND AUTHORITIES.

1.  The election should have been by viva voce vote. Const., Sec. 155; Kentucky Statutes, Sections 1446, 3588, 4434, and 4467.

2.  The two-thirds majority for the proposition was not equal to two-thirds of the whole number of votes cast in this election for city officers. Kentucky Statutes, Section 3490, subsection 34, ("two-thirds of all the qualified electors in such town"); Belknap v. City, 99 Ky. 474; Montgomery County Fiscal Court v. Trimble 104 Ky. 629.

3.  That the indebtedness of the city at the time of the election being in excess of the constitutional limit, the election was

void. Cyc., Vol. 15, page 391; Stevens v. Wyatt etc., 16 B. Mon.
542; Revised Statutes Section 8, Articles 7, Chapter 2.

4. The city of Central City has never adopted the provisions of
the graded common school law. Kentucky Statutes, Sections
4464 and 4489.

5. Appellees have no authority to jointly issue the bonds. Bow
man, &c., v. City of Middlesboro, 28 Ky. L. Rep. 1290. (not report
ed in the Kentucky Law Reports).

WALKER WILKINS and TOM B. McGREGOR for appellees.

POINTS AND AUTHORITIES.

1. This is a proceeding by a fourth class town under the
charters of fourth class towns to establish a system of city
schools as distinguished from the establishing of a graded com-
mon school system, held by virtue of and in intended compliance
with sub-section 34, Section 3490, Ky. St., and in such a proceed-
ing a secret ballot is proper instead of a viva voce vote. Ky. St.,
Sections, 3588 to 3606, 4489.

2. The board of education and the city council must act
jointly in the proceedings. Ky. St., Sec. 3592, Bowman v. City of
Middlesboro, 28 Ky. L. Rep. 129.

3. Two-thirds of those voting upon the question submitted all
that is required. Montgomery Co. Fiscal Court v. Trimble, 104 Ky.
629; Board of Education v. City of Winchester, 120 Ky. 591; Bow
man v. City of Middlesboro, 28 Ky. R. 1290; Knipper v. City, 109
Ky. 187; 28 Cyc., 1584; Redding v. Esplen, 207 Pa. St. 248; 42
Federal, 723; 65 Federal, 469; 28 Cyc., 604; Shoemaker v. Goshen
Tp., 4 Ohio St., 569; Bradford v. Westbrook, 88 S. W., 382; Emi-
nence v. Grasser, 81 Ky. 52; 101 U. S. 196; 2 Met. 60; Taylor v.
Sparks, 118 S. W. 970; Trustees v. Garvey, 80 Ky. 159; Williams-
town School District v. Webb, 89 Ky. 264; Cowan v. Prowse, 93
Ky. 596, Sub-sections 26 & 34, Sec. 3490, Ky. Statutes; Sections
157-8-9 Constitution.

OPINION OF THE COURT BY JUDGE BARKER—Affirm-
ing.

Central City belongs to the fourth class of munci-
palities of this commonwealth. Its general council,
desiring to aid the common schools of the city by
erecting two new school buildings, duly and legally
passed an ordinance submitting the question to the

qualified voters as to whether or not the city authorities should be empowered to issue $24,000 of bonds for the purpose of raising sufficient money to erect the buildings in question. The question of the issuance of the bonds was submitted to the voters of the city at the regular election in November, 1908, and of the votes cast upon the question 310 were in favor of the issuance of the bonds and 37 against the proposition. Thereupon the city officials were proceeding to issue and sell the bonds thus authorized when the appellants, who are citizens and taxpayers of Central City, instituted this action to enjoin this being done. The petition is carefully and skillfully drawn, and sets forth all of the facts concerning the election and the power of the city to issue the bonds in such manner as that a general demurrer raises all the legal questions to be adjudicated in order to determine whether or not the bonds so issued would be valid and legal. A general demurrer was interposed to the petition and sustained by the circuit court. The plaintiffs (appellants) declining to amend further, their petition was dismissed, and of this judgment they are now complaining. In discussing the questions necessary to be adjudicated, we find it convenient to assume in the argument that all the procedure leading up to the issuance of the bonds was regular and valid except when the contrary is stated.

The first question raised by the demurrer is whether or not the election was invalid because the vote was taken by secret ballot instead of viva voce. The appellants insist that, inasmuch as this was an election concerning common school matters, the vote should have been taken viva voce instead of by secret ballot, as was done. In disposing of this question

we shall assume (although we do not so decide) that under the statutes regulating the matter all elections concerning public schools, whether for trustees or for the imposition of taxes, must be by viva voce vote. The election which was held in this case was not held under the statute regulating common school elections, although the common schools of the city are to be the beneficiaries of the proceeds of the bonds when sold. Cities of the fourth class have a complete system of common schools established by sections 3588-3606, Ky. St., inclusive, and these schools are under the dominion and supervision of the board of education consisting of two trustees from each ward of the city; and for the support of these schools the city is authorized by subsection 2 of section 3490 (Russell's St., § 1511, subsec. 2) to collect certain taxes, but it is manifest that the taxes so authorized are only for the purpose of maintaining schools, and not to meet the extraordinary expense of erecting new buildings. By sub-section 34 of section 3490 the city has general power, when authorized in the manner therein pointed out, to issue municipal bonds for the purpose of meeting municipal needs and liabilities. This subsection is as follows: "If at any time the board of council shall deem it necessary to incur any indebtedness, the payment of which cannot be met without exceeding the income and revenue provided for the city for that particular year, they shall give notice of an election by the qualified voters of the town to be held, to determine whether such indebtedness shall be incurred. Such notice shall specify the amount of the indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation

for an interest and sinking fund, as herein provided. Such notice shall be published for at least two weeks in some newspaper published in, or of general circulation in such town, or by posting written or printed notices at three or more public places in such town. If, upon a canvass of the votes cast at such election, it appears that two-thirds of all the qualified electors in such town shall have voted in favor of incurring such indebtedness, it shall be the duty of the board of council to pass an ordinance providing for the mode of creating such indebtedness, and of paying the same. But such indebtedness shall not in any event exceed the limit provided in the Constitution for cities of the fourth class. And in such ordinances provision shall be made for the levy and collection of an annual tax upon all real and personal property subject to taxation within such town, sufficient to pay the interest on such indebtedness as it falls due; and also to constitute a sinking fund for the payment of the principal thereof, within a period of not more than twenty years from the time of contracting the same. It shall be the duty of the board of council in each year thereafter, at the time at which other taxes are levied, to levy a tax sufficient for such purpose, in addition to the taxes by this chapter authorized to be levied. Such tax, when collected, shall be kept in the treasury as a separate fund, to be inviolably appropriated to the payment of the principal and interest of such indebtedness." The election under discussion was held under this statute, and not under any statute concerning graded or common schools. The erection of the school buildings is clearly a municipal purpose, and the city is authorized by the statute to issue bonds in furtherance of its purposes whenever authorized by a two-

thirds majority of the qualified voters so to do. When the buildings are erected they will be under the supervision and control of the board of education, as all the other property dedicated to public education is held and controlled. Therefore the election which was held was a municipal election and was properly taken by secret ballot, as provided by the Constitution. The case of Bowman, etc., v. City of Middlesboro, etc., 91 S. W., 726, 28 Ky. Law Rep., 1290, is not authority for the position that this election should have been taken by viva voce vote. The opinion holds expressly to the contrary. In that case there were two questions submitted to the people: One was concerning the imposition of a tax for the maintenance of the public schools, and the other was whether or not the city was authorized to issue $12,000 of bonds for the erection of a school building. The tax question was submitted under the law regulating common school elections, and was properly taken by a viva voce vote; but the question of the issuance of the bonds, which was precisely similar to that in the case at bar, was submitted to the voters by secret ballot, and the election was expressly approved in the opinion. On the question in hand it is said: ''It will be observed that the question of whether or not a tax should be imposed was submitted to the voters at a viva voce election, and the question whether or not the indebtedness of $12,000 should be incurred was submitted to them upon the official ballots. Both propositions were adopted by a vote of 480 for and 18 against. The result was duly declared, and thereupon the city council proceeded by ordinance to provide for the issual of $12,000 of bonds.'' It is also held in the opinion that the bonds were municipal bonds with which the

board of education had nothing to do, but that the fact that they were signed and ratified by that board did not invalidate them.

It is further objected that the right to issue the bonds did not carry at the election, not having received two-thirds of the votes cast at the election. This objection is based upon the fact that, while the affirmative of the question of the issuance of the bonds received more than two-thirds of the votes cast upon that question, yet it is conceded that it did not receive two-thirds of the highest number of votes cast on other matters at the general election. In the case of Belknap v. City of Louisville, et al., 99 Ky. 474, 36 S. W. 1118, 18 Ky. Law Rep. 313, 34 L. R. A. 256, 59 Am. St. Rep. 478, we held that, where the issuance of municipal bonds was required to be submitted to the people, the affirmative of the proposition should receive the requisite majority of all the votes cast at the election, whether on the particular proposition of the issuance of the bonds or on other questions; but this rule was changed in the case of Montgomery County Fiscal Court v. Trimble, 104 Ky. 629, 47 S. W. 773, 20 Ky. Law Rep. 827, 42 L. R. A. 738, wherein the Belknap case was overruled and the principal established that in such elections the affirmative was only required to receive the requisite majority of the votes actually cast upon the question. This last rule has been reaffirmed in Worthington v. Board of Education of City of Lexington, 71 S. W. 879, 24 Ky. Law Rep. 1510, Turpin v. Madison County Fiscal Court, etc., 105 Ky., 226, 48 S. W. 1085, 20 Ky. Law Rep. 1131, and Board of Education of Winchester v. City of Winchester, 120 Ky. 591, 87 S. W. 768, 27 Ky. Law Rep. 994.

The third and last objection to the validity of the
bonds is that at the time the election was held the
city already had a bonded debt so great that, under
section 158 of the Constitution, no additional indebt-
edness could be created. Prior to the adoption of
the present Constitution, Central City had guaran-
teed $30,000 of the bonds of the Central City Water
Company, a private corporation, and these bonds
were outstanding and unpaid at the time the election
was held; but since and before the institution of
this action all these bonds were paid off by the prin-
cipal debtor and the bonds are now canceled. So
that the city has no bonded indebtedness whatever
at the present time. The assessed value of all the
property of the municipality is $483,000. By the
terms of section 158, cities of the fourth class are
authorized to contract an indebtedness when properly
authorized by vote, not exceeding 5 per cent. of the
assessed value of its property. With $30,000 of water
bonds outstanding clearly no further indebtedness
could be created. With the water bonds paid off
and discharged the city will be authorized to incur
an indebtedness of $24,000, the amount involved here.
The question, then, is whether or not the indebted-
ness is created at the time of the election or at the
time of the issuance and sale of the bonds. Clearly
the election is only one of the steps necessary to be
taken in order to legally create the indebtedness,
and the indebtedness itself is not created until the
bonds are sold. No good would result in holding that
the election is void because at the time it was held
the city could not under the Constitution have issued
the bonds which the voters authorized. Every sub-
stantial good intended to be effectuated by the Consti-
tution will be subserved by holding that the right

to issue the bonds is to be determined by the condition of the indebtedness of the municipality at the time the bonds are sold. The intention of the Constitution was to limit the aggregate amount of the bonded indebtedness of municipalities; and, when this is effectuated and the indebtedness kept within the prescribed limits, the whole intent of the framers of that instrument is subserved. In 28 Cyc. p. 1584, the rule on the subject in hand is thus stated: "The time of the actual issue of municipal bonds is the time for determining whether the debt limit is exceeded." And in support of this text the following cases are cited: Redding v. Esplen, 207 Pa. 248, 56 Atl. 431; Thompson-Houston Electric Co. v. Newton (C. C.) 42 Fed. 723; Prickett v. Marceline (C. C.) 65 Fed. 469. It will be observed that there is a difference in the language of section 157 of the Constitution and that of subsection 2 of section 3490 of the Kentucky Statutes as to what shall constitute a majority vote on the question of the issuance of the bonds. It is apparent, however, that the Legislature intended to conform the act to the Constitution; but whether it did or not the Constitution prevails. With this construction, all that was necessary for the affirmative of the proposition as to the issuance of the bonds to carry was that it should receive two-thirds of the votes cast upon the question at the election; and this the demurrer concedes it received.

In conclusion, we are of opinion that there are no substantial objections to the validity of the bond issue involved in the case before us, and therefore the judgment of the circuit court sustaining the general demurrer of the appellees and dismissing the petition is affirmed.