## Board of Education, City of Maysville v. Lee, et al.

(Decided May 8, 1913.)

### Appeal from Mason Circuit Court.

1. Schools and School Districts—Cities of Fourth Class—Taxation —Mandamus.—Taxes levied by the board of council of a city of the fourth class to create a sinking fund to redeem bonds issued by the city for the purpose of erecting school buildings are included within the 50-cent tax limit prescribed by sub-section 2, section 3490, Kentucky Statutes, and the Board of Education cannot require the levy of a tax of 50 cents on the $100 in addition to the taxes so levied for sinking fund purposes.

2.   Schools and School Districts—Kentucky Statutes, Sub-section 2,
     Section 3490—Act Approved March 24, 1904, Chapter 112,   Acts
     1904.—Under sub-section 2, section 3490, Kentucky Statutes, the
     tax rate for the maintenance of public schools or the erection of
     public school buildings for cities of the fourth class is limited
     to 50 cents, and this rate cannot be exceeded unless a majority
     of the voters voting upon the question at an election held pur-
     suant to the amendment of March 24, 1904, chapter 112, Acts,
     1904, authorize an additional tax not exceeding fifteen cents on
     the $100 worth of taxable property.

WORTHINGTON, COCHRAN & BROWNING for appellant.

W. H. REES for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

The question presented on this appeal is: Are taxes
levied by the board of council of a city of the fourth
class to create a sinking fund to redeem bonds issued by
the city for the purpose of erecting school buildings in-
cluded within the 50-cent tax limit prescribed by sub-sec-
tion 2, section 3490, Kentucky Statutes, or may the board
of education require the levy of a tax of 50 cents on the
$100 in addition to the taxes so levied for sinking fund
purposes?

The question arises in the following way:

For the year 1912 the Board of Education of the City
of Maysville fixed the amount of money necessary to
defray the expenses of maintaining the schools, improv-
ing or constructing buildings, etc., at $26,248.    The
amount to be derived from the school fund of the State
and from sources other than municipal taxation was es-
timated at $7,900.    The sum necessary to be raised by
the city was fixed at $18,438.    Pursuant to the provisions
of section 3594, a report showing the above facts was
duly filed with the proper officer of the city, who laid it
before the city council.    That body levied for school pur-
poses a tax of 37 cents on each $100 worth of taxable
property.    As the taxable property for the year 1912
was only $4,161,018, the tax so levied was    sufficient to
produce an income of only $15,395.76,    thus    leaving    a
deficit of $3,043.24 between the estimated expenses and
the proceeds of the tax levied by the city council.    There-
upon the board of education brought this action of man-
damus against the mayor and members of the board of
council,to compel them to levy a tax sufficient to produce

a revenue of $18,438, the sum which the report made to the board of council showed was necessary to be raised by municipal taxation. It developed on the hearing that on September 3, 1906, the board of council of the city of Maysville, upon the recommendation of the board of education, enacted an ordinance submitting to the qualified voters of the city of Maysville the proposition whether or not said city should incur an indebtedness of $60,000, and issue 4 per cent coupon bonds for that amount for the purpose of purchasing two lots of ground and erecting thereon a high-school building and a district school building. The ordinance authorizing the indebtedness provided for an annual levy of 8 cents, or so much thereof as might be necessary, on each $100 worth of all the assessed property of the city of Maysville, for the purpose of paying the coupons attached to the bonds as they should become due, and beginning with the year 1913 for an annual levy of 20 cents, or so much thereof as might be necessary, on each $100 worth of all the assessed value of all the taxable property in the city, for the purpose of creating a sinking fund to pay said bonds. Pursuant to this ordinance an election was duly held, and the proposed indebtedness authorized by a vote of more than two-thirds of the qualified voters. Bonds of the city amounting to $60,000 were thereafter issued, and the proceeds thereof expended for the purpose set out in the ordinance.

In the year 1908 the board of council, upon the recommendation of the board of education, enacted an ordinance submitting to the voters the proposition whether or not the city should incur a further indebtedness of $30,000, and issue 4 per cent coupon bonds therefor, for the purpose of completing the high school building and the district school building, and repairing and improving other school property in the city. The ordinance provided for an annual levy of 4 cents, or so much thereof as might be necessary, on each $100 worth of the assessed property of the city of Maysville, to pay the coupons attached to the bonds, and beginning with the year 1923 for an annual levy of 20 cents, or so much thereof as might be necessary, on each $100 worth of the assessed value of the taxable property in the city, for the purpose of creating a sinking fund to pay the bonds. This additional indebtedness was also authorized by a vote of the people, and the bonds were issued and the proceeds used for the purposes set out in the ordinance. Having pro-

vided for the payment of the annual interest, the board of council annually levies a tax sufficient to raise the sum of $3,600, or 4 per cent on the total amount of the bonds, amounting to $90,000. The trial court held that the annual interest of $3,600 was a part of the current school expense for each fiscal year, and that taxes levied to raise this interest were necessarily a part of the levy for school purposes, and should be taken into consideration in determining whether or not the limitation of 50 cents on each $100 worth of taxable property prescribed by sub-section 2, section 3490, Kentucky Statutes, was exceeded. As a levy of 50 cents would yield only $20,-805.09, it was therefore necessary to deduct from that sum the sum of $3,600, the annual interest on the bonded indebtedness, for the payment of which provision had already been made by the board of council, thus leaving the sum of $17,205.09, to raise which it was the duty of the board of council to levy the necessary tax. The court, therefore, held that as the tax of 37 cents theretofore levied by the board of council was sufficient to raise only $15,395.76, the council could be required to levy an additional tax sufficient to raise the difference between the sum of $15,395.76 and the sum of $17,205.09, or the sum of $1,809.33, which could be done without exceeding the tax limit of 50 cents on each $100 worth of taxable property. Judgment was entered accordingly, and the board of education appeals.

By section 157 of the Constitution, the tax rate for other than school purposes for cities having a population of less than 10,000 is limited to 75 cents on the $100.

Sub-section 2, section 3490, Kentucky Statutes, is as follows:

"To levy and collect for municipal purposes an annual *ad valorem* tax not exceeding seventy-five cents on every hundred dollars of all property made taxable by law for State purposes; in addition not exceeding fifty cnts on the hundred dollars' worth of property taxable 'for State purposes,' for the maintenance of public schools, or the erection of buildings for public school purposes; and not exceeding fifty cents to meet the principal and interest of any bonded debt hereinafter authorized; and not exceeding one dollar to meet the principal and interest on, and provide a sinking fund for the extinction of any bonded debt contracted before the adoption of the present Constitution, provided no greater levy to pay

such indebtedness be authorized by the laws existing at the time of the creation of such debt.''

The foregoing section was amended by an act approved March 24, 1904, and found in Chapter 112, Acts 1904, by adding the following provision:

''And, provided further, That upon approval of a majority of the voters voting upon the question, at an election to be ordered by the mayor, upon the approval of the city council, then the city council may levy an additional tax of not exceeding fifteen cents on the $100 worth of property for the maintenance of public schools or the erection of buildings for public school purposes. That in other respects said election shall be ordered and held in the manner provided for elections to establish a graded common school.''

Subsection 34 of section 3490 is as follows:

''If at any time the board of council shall deem it necessary to incur any indebtedness, the payment of which can not be met without exceeding the income and revenue provided for the city for that particular year, they shall give notice of an election to be held by the qualified electors of the town, to determine whether such indebtedness shall be incurred. Such notice shall specify the amount of the indebtedness proposed to be incurred, the purpose or purposes of the same, and the amount of money necessary to be raised annually by taxation for an interest and sinking fund, as herein provided. Such notice shall be published for at least two weeks in some newspaper published in, or of general circulation in such town, or by posting written or printed notices at three or more public places in such town. If, upon a canvass of the votes cast at such election, it appears that two-thirds of all the qualified electors in such town shall have voted in favor of incurring such indebtedness, it shall be the duty of the board of council to pass an ordinance providing for the mode of creating such indebtedness, and of paying the same. But such indebtedness shall not in any event exceed the limit provided in the Constitution for cities of the fourth class. And in such ordinances provision shall be made for the levy and collection of an annual tax upon all real and personal property subject to taxation within such town, sufficient to pay the interest on such indebtedness as it falls due; and also to constitute a sinking fund for the payment of the principal thereof, within a period of not more than twenty years from the time of contracting the same. It

shall be the duty of the board of council in each year thereafter, at the time at which other taxes are levied, to levy a tax sufficient for such purpose, in addition to the taxes by this chapter authorized to be levied. Such tax, when collected, shall be kept in the treasury as a separate fund, to be inviolably appropriated to the payment of the principal and interest of such indebtedness.''

Section 159, Constitution, is as follows:

''Whenever any city, town, county, taxing district or other municipality is authorized to contract an indebtedness, it shall be required, at the same time, to provide for the collection of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund for the payment of the principal thereof, within not more than forty years from the time of contracting the same.''

Section 3595, Kentucky Statutes, provides:

''Said board shall, within thirty days prior to the time prescribed for the levy to be made in the charter of cities of the fourth class, approximately ascertain the amount of money necessary to be used to defray the expenses of maintaining the schools, improving or constructing buildings, et cetera, thereof, and any liquidation of the liabilities during the current fiscal year, and report the same, together with the estimated amount to be received from the common school fund of the State, interest on bonds, endowments, et cetera, to the city auditor or clerk, who shall thereupon report the same to the city council, and the said city council shall make the necessary levy, and collect the tax to provide suitable school buildings, and to defray the general expenses necessary for school purposes: Provided, That the levy for any one year shall not exceed that fixed by law on each $100 of value of taxable property in the city, as returned by the board of equalization. Said tax shall be paid to the board or authorized agent of same, as fast as collected.''

For the Board of Education it is insisted that it has no power to incur a bonded indebtedness. The city alone has the power under section 3490, Kentucky Statutes, supra. When, therefore, the bonded indebtedness was authorized by the Board of Council and the voters of the City of Maysville, said indebtedness became and was a debt of the city of Maysville as a whole, and was in no sense a debt of the public school system of the city. Being a debt of the city as a whole, annual payments of in-

terest are to be treated as an expense of the city, and are not chargeable to the public school system. This view, it is claimed, is confirmed by sub-section 2, section 3490, Kentucky Statutes, which provides for a tax rate not exceeding 50 cents "to meet the principal and interest of any bonded debt" thereafter authorized. It is argued that it was the evident purpose of the Legislature to provide for a 50-cent levy for sinking fund purposes in addition to the levy of 50 cents for school purposes. It is also insisted that the language of this court in the case of Frost, et al. v. Central City, et al., 134 Ky., 434, 120 S. W. 367, sustains the contention of the Board of Education. The language referred to is as follows:

"Cities of the fourth class have a complete system of common schools established by sections 3588-3606, Ky. Stats., inclusive, and these schools are under the dominion and supervision of the board of education consisting of two trustees from each ward of the city; and for the support of these schools the city is authorized by sub-section 2 of section 3490 (Russell's Stats., sec. 1511, sub-sec. 2) to collect certain taxes, but it is manifest that the taxes so authorized are only for the purpose of maintaining schools, and not to meet the extraordinary expense of erecting new buildings."

While it is true that the above language does tend to support the contention of the board of education, it was not necessary to the decision of the case, and it is quite evident was used inadvertently; for the language itself is in the teeth of the express provisions of sub-section 2, section 3490, which fixes a limitation of 50 cents on the $100 worth of property taxable "for State purposes" for the maintenance of public schools or for the erection of buildings for public school purposes."

Section 157 of the Constitution limits the tax rate of cities of the fourth class for other than school purposes to 75 cents on the $100. This section does not impose any limitation on the tax rate for school purposes. It is left for the Legislature to fix such a limitation if it so desires. By sub-section 2, section 3490, the Legislature fixed the limit at 50 cents on the $100, and the limit so fixed applies not only to taxes levied for the maintenance of schools, but for the erection of school buildings. The real question, therefore, is: Are taxes levied to create a sinking fund to redeem bonds issued for the purpose of erecting school buildings taxes levied for the erection of school buildings? Manifestly, all taxes

levied by the Board of Council are either for school purposes or for other than school purposes. If the board of education had desired to erect a building worth $10,000 at the time that it recommended the erection of the two buildings worth $60,000, and had included the sum of $10,000 in its estimated expenses for that year, it would hardly be contended that this sum would not be included in the 50-cent limit. Or, if desiring to erect a building worth $10,000, and not wishing to levy the whole amount in one year, had asked for $2,000 a year for five successive years, then for like reason the sum so asked each year for the erection of buildings would necessarily be included within the limit of 50 cents. What, then, is the difference in principle between levying the whole sum at once or levying so much each year in order to raise a sufficient sum to erect a building, and the method adopted in the present case of borrowing the money for the purpose of erecting school buildings, and levying each year a sum sufficient to pay the principal and interest on the sum so borrowed. In either case the taxes levied are levied for the erection of school buildings, and are necessarily included within the 50-cent limit. The tax limit prescribed by sub-section 2 of section 3490 is not necessarily confined to the estimated expenses as fixed by the board of education pursuant to section 3595. It is a limitation on the power of the Board of Council. In levying taxes for school purposes, it cannot exceed the rate fixed. When the bonded indebtedness in question was incurred it was the mandatory duty of the Board of Council to provide for the levy of an annual tax sufficient to pay the interest on said indebtedness, and to create a sinking fund to pay the principal thereof. Section 159, Constitution; sub-section 34, section 3490, Kentucky Statutes. It matters not whether the annual interest is estimated in the expenses of the board of education or not, the obligation to levy the tax cannot be escaped. Being a tax that must be levied, and being a tax that cannot be regarded in any other light than a tax levied for the erection of school buildings, it follows that the board of education is not entitled to a levy of 50 cents in addition to the levy for sinking fund purposes, but that the latter levy must be taken into consideration in determining whether or not the limitation of 50 cents on the $100 has been exceeded. The fact that the Legislature enacted the amendment of March 24, 1904, above set out, confirms this view. That amendment author-

izes an additional tax of not exceeding 15 cents on the $100 worth of property for the maintenance of the public schools or the erection of buildings for school purposes, upon the approval of a majority of the voters, voting upon the question at an election to be held for that purpose. By authorizing a levy of 50 cents without a vote of the people, and an additional levy of 15 cents with a vote of the people, we think it reasonably clear that the Legislature did not intend that the tax rate for the maintenance of the schools and the erection of school buildings should exceed 50 cents on the $100 worth of taxable property, without the approval of a majority of the voters, voting at an election held pursuant to the aforesaid amendment. If at any time in the future, the Board of Education finds that because of the tax levy for sinking-fund purposes, or for any other reason, the 50-cent levy is insufficient for the proper maintenance of the schools, it may apply to the mayor and council of the city to order an election for the purpose of submitting to the qualified voters of the city the question whether or not an additional tax of not exceeding 15 cents shall be levied for school purposes.

Judgment affirmed.