## Bird v. Asher, County Judge, et al.

(Decided June 13, 1916.)

### Appeal from Bell Circuit Court.

1. Counties—Roads—Limit of Indebtedness and Taxation for Under Section 157a of Constitution.—A fiscal court cannot create an indebtedness under section 157a of the constitution which cannot be fully paid within the time fixed for its maturity by the 20 cent tax authorized by this section.

2. Counties—Roads—Construction of Section 157a of the Constitution. —A county may incur under section 157a of the constitution an indebtedness to the extent of 5 per cent. of the assessed value of its property, if it can pay this indebtedness with the 20 cent tax authorized by this section; otherwise it cannot do so, but must confine the indebtedness to a sum that can be paid by this tax without reference to other taxes or funds.

3. Counties—Roads—Creation of Indebtedness for Under Section 157a of the Constitution—Funds That May Be Applied to Payment of.—When a county creates an indebtedness under section 157a

of the constitution, it may apply to the payment of this indebtedness so much of the State aid road fund and so much of the 50 cent tax authorized by section 157 of the constitution as it chooses to apply to this purpose, but it cannot be compelled to apply any part of either' of these funds to the payment of the indebtedness so created.

4. Counties—Roads—Twenty Cent Tax Must Be Applied to Pay Indebtedness Created Under Section 157a.—The whole of the 20 cent tax collected under section 157a must be applied to the payment of any indebtedness created under this. section and no part of it can be diverted for any other purpose until the debt has been paid. If it is, the members of the fiscal court will be civilly and criminally liable under section 4281u of the Kentucky Statutes.

5. Counties—Roads—Creation of Indebtedness for by Different Votes. —It is immaterial how many different issues of bonds authorized by the vote of the people there may be outstanding at the same time, provided always that the total of these outstanding bonds does not at any time exceed in the aggregate an amount that can be paid by the 20 cent tax levy alone.

6. Counties—Roads—Limit of Indebtedness for Under Section 157a.— How Computed.—The amount of indebtedness that a county may create under section 157a is a matter of calculation to be computed on the basis of how much can be realized by a 20 cent tax on the assessed value of the taxable property of the county according to the assessment last preceding the bond issue; and no bonds in excess of the amount that can be paid with the 20 cent tax on this assessment, and within the final maturity of the bonds, can be issued by the fiscal court.

WM. LOW for appellant.

C. I. DAWSON for appellees.

OPINION OF THE COURT BY JUDGE CARROLL—Reversing.

This suit was brought by the appellant, Bird, a taxpayer of Bell county, against the members of the fiscal court seeking to enjoin the fiscal court from issuing or selling $150,000.00 of road bonds authorized to be issued by a vote of the people of Bell county on May 13, 1916. The lower court sustained a general demurrer to the petition on the ground that it did not state sufficient facts to constitute a cause of action, and we are called on to determine the correctness of this ruling.

The petition charged, in substance, that in February, 1915, the voters of Bell county authorized the fiscal court to, and it did, under section 157a of the constitution, issue and sell road bonds to the amount of $250,-000.00. That for the purpose of paying the interest and creating a sinking fund to retire these bonds at maturity

the fiscal court, in 1915, levied a tax of 25 cents on each one hundred dollars' worth of taxable property in the county, 20 cents thereof to be paid out of the 50 cent levy authorized by section 157 of the constitution and 5 cents thereof to be paid out of the 20 cent levy authorized by section 157a of the constitution.

It was further averred that the fiscal court, in 1916, made provision for the payment of the interest and the creation of a sinking fund to retire this $250,000.00 bond issue by setting aside 4 cents out of the 20 cent levy authorized by section 157a and by setting aside 10 cents out of the 50 cent levy authorized by section 157, and in addition thereto appropriated for the same purpose all the money to be received by Bell county in the year 1916 from the state aid road fund, amounting to about $13,000.00.

It was further averred that at the election held on May 13, 1916, a majority of the voters authorized the fiscal court to issue and sell an additional $150,000.00 worth of road and bridge bonds, and that the fiscal court in the order directing the issual and sale of this $150,000.00 worth of bonds levied and set apart 15 cents of the 20 cent levy authorized by section 157a for the purpose of paying the interest and creating a sinking fund to retire this $150,000.00 issue.

After setting out that the assessed valuation of Bell county in 1915 was approximately nine million dollars and about the same or a little more in 1916, it was alleged that the twenty cent tax allowed by section 157a was not sufficient to pay the interest and create a sinking fund to pay these two issues of bonds, and that the court had no right to appropriate the state aid road fund to create a sinking fund or pay the interest on these bonds and no authority to appropriate any portion of the 50 cent tax authorized and levied under section 157 to create a sinking fund and pay the interest on the $250,-000.00 bond issue, as these bonds could only be satisfied and retired by appropriating for this purpose the 20 cent levy authorized and imposed under section 157a.

Accepting as true the averments of this petition and especially the charge that the 20 cent tax authorized to be levied and that may be levied under section 157a will not raise a sufficient sum of money to pay the interest and sinking funds on these two issues of bonds, the principal question in the case is this: Can the fiscal court

issue or authorize the issual of road bonds under section 157a in a larger sum than can be paid in full within the time specified as the maturity of the bonds by the 20 cent tax authorized to be levied under section 157a?

A minor question is, can the fiscal court set apart for the purpose of paying the interest and principal sum of bonds issued under section 157a such part of the state aid road fund as it desires to appropriate for this purpose? And yet another minor question is the right to apply to the payment of the interest and principal sum of these road bonds such part of the 50 cent tax that may be levied and collected under section 157 of the Constitution as it may desire to appropriate for this purpose?

We say these two last inquiries are minor ones because it has been heretofore expressly decided in Mitchell v. Knox County Fiscal Court, 165 Ky. 543, that the fiscal court had authority to apply to the payment of the interest and principal sum of road bonds issued under section 157a, so much of the state aid road fund received by the county as it chose to appropriate to this purpose, and the further right to apply to the payment of such road bonds and interest so much of the fund raised by the 50 cent tax levy authorized by section 157 as it desired to apply to this purpose. Upon these points it was said in that opinion that:

"In short, whenever a county constructs a public road under the direction of the State Commissioner of Public Roads and the provisions of the statute, the state will refund to the county one-half of the cost thereof out of its state road fund; and the money thus becoming the property of the county, it may be appropriated and applied as ordinary county funds.

"This is a full compliance with subsection 5, *supra,* which provides that money so appropriated from the state road fund shall be expended in constructing or reconstructing public roads under the direction of the State Commissioner of Public Roads, since the road for which the appropriation is made out of the state road fund must have been completed before the state aid appropriation can be paid. This satisfies the requirement of the statute, that all money appropriated from the state road fund must be expended in constructing and re-constructing public roads under the direction of the Commissioner of Public Roads.

. "We are of opinion, therefore, that the fiscal court of Knox county acted within its power when it applied a portion of the money to be received by it from the state aid fund to the payment of its bonded indebtedness, as set forth in the resolution of March 29, 1915, above quoted.   *   *   *

"The situation before us, briefly stated, is this: Under section 157 of the constitution, the fiscal court may levy a tax of fifty cents on each $100.00 of taxable property for other than school purposes; and, under section 157a of the constitution, the fiscal court may, in addition to the tax allowed by section 157, levy a tax not exceeding twenty cents on each $100.00 of taxable property, for the purpose of paying the interest of its road bonds and providing a sinking fund for their payment.

"But, in levying the fifty cents tax for general purposes on each $100.00 under section 157 of the constitution, the county may, as provided by section 180 of the constitution, set aside a portion of the levy of fifty cents to be applied to the payment of interest on its road bonds, and the creation of the sinking fund, and thereby supplement its fund raised for that purpose under section 157a. Russell County v. Hill, 164 Ky. 365. Thus the county has authority to levy a tax aggregating seventy cents on the $100.00, exclusive of taxes levied for school purposes." And we now reaffirm what was said in the Mitchell case respecting the matter under consideration. .

Nor do we find in the opinion in Cleary v. Pieper, 169 Ky. 434, anything conflicting with the opinion in Mitchell v. Knox County Fiscal Court. In the Cleary case it was merely decided that under section 157a of the constitution a tax exceeding 20 cents on each $100.00 of taxable property could not be levied, and the same principle was announced in the Mitchell case. In the Cleary case the court did not intimate that the fiscal court might not, in addition to this 20 cents, apply to the payment of the interest and principal on these bonds so much of the state aid fund and so much of the 50 cent tax authorized by section 157 as it desired to apply for that purpose.

We, therefore, pass as without merit the argument that the fiscal court of Bell county had no authority to appropriate any part of the State aid fund or any part

of the 50 cent tax collected under section 157 to the payment of either or both of these bond issues, because it had and has the right to appropriate to the payment of the interest on both or either of these bond issues, and to set aside as a sinking fund for the payment of these bond issues, either or both of them, so much of the state aid fund and so much of the 50 cent tax as it chooses to set apart for the payment of the interest or to create a sinking fund, or both.

It may, however, be here stated that there is no constitutional or statutory obligation imposed on the fiscal court to set aside or appropriate for the purpose of paying either the interest or the principal sum of road bonds issued under section 157a any part of the state aid fund or any part of the 50 cent tax authorized by section 157. Whether the fiscal court applies to the payment of the interest or the principal sum of these bonds any part of the state aid fund or any part of the 50 cent tax, is entirely within its discretion. It may act in this matter as it pleases. It may, in any one year, appropriate such part of either of these funds as it chooses to pay the interest on or principal of these road bonds, either or both, and it may, in the next year, not appropriate any part of either of these funds for either of these purposes. Nor can one fiscal court bind a subsequent fiscal court to use the state aid fund, or any part thereof, or the 50 cent tax, or any part thereof, in paying either the interest or the principal on these bonds, as the fiscal court in each year may act in this matter for itself unrestrained by what the court did in former years or by what the court may do in future years.

Coming now to the principal question in the case, restating it briefly, it is this: Can the fiscal court issue or authorize the issual of road bonds under section 157a in a larger sum than can be paid in full within the time specified as the maturity of the bonds by the 20 cent tax authorized to be levied under section 157a of the constitution? We think it cannot. Section 157a of the constitution reads, in part:

"Any county may be permitted to incur an indebtedness in any amount fixed by the county, not in excess of five per centum of the value of the taxable property therein, for public road purposes in said county * * *; and when any such indebtedness is incurred by any

county, said county may levy, in addition to the tax rate allowed under section 157 of the constitution of Kentucky, an amount not exceeding twenty cents on the one hundred dollars of the assessed valuation of said county for the purpose of paying the interest on said indebtedness and providing a sinking fund for the payment of said indebtedness.''

And section 4307 of the Kentucky Statutes enacted for the purpose of carrying out section 157a of the constitution reads, in part: ''The fiscal court shall have the power and authority to issue and sell bonds from time to time within the constitutional limitations for the purpose of building, constructing and reconstructing public roads and bridges; * * * these bonds to be in denominations of not less than one hundred dollars nor more than one thousand dollars, to run not less than five nor more than thirty years, and to be redeemed within that time at the pleasure of the court. * * * Provided, however, that all the money raised by the sale of bonds shall be used solely and alone for the building, construction, or reconstruction of roads.'' * * *

It is true that under section 157a an indebtedness for public road purposes not in excess of 5 per centum of the value of the taxable property in the county may be created, but this authority to incur an indebtedness not in excess of 5 per centum of the value of the property must be read in connection with and as limited by the amount of the tax that may be levied under and by virtue of section 157a for the purpose of paying the interest on and providing a sinking fund for the payment of the indebtedness so created.

The authority to ''incur an indebtedness in any amount fixed by the county not in excess of 5 per centum of the value of its taxable property therein'' is not a grant of power that will authorize the fiscal court or the people of the county to incur an indebtedness not in excess of 5 per centum without any regard to the amount that can be raised by the 20 cent tax authorized by section 157a. The authority to incur an indebtedness not in excess of 5 per centum is of course a grant of power, but at the same time it is a limitation and evidently the idea for its incorporation into the section was borrowed from section 158 of the constitution, which fixes a limit on the indebtedness that any municipality may incur, and it has been frequently held that section 158 and the

limitation therein must be read in connection with section 157 and the limitation there prescribed. Knipper v. City of Covington, 109 Ky. 187; Fiscal Court of Franklin County v. Com., 139 Ky. 307; Southern Bitulithic Co. v. DeTreville, 156 Ky. 513; City of Marion v. Haynes, 157 Ky. 687; Bradford v. Fiscal Court of Bracken County, 159 Ky. 544. So that a county may not, under section 157a, vote a tax exceeding 20 cents or incur an indebtedness exceeding 5 per centum of the value of the taxable property. Neither can it incur an indebtedness up to 5 per centum unless the 20 cent tax will pay the indebtedness within the time fixed for its maturity.

Interpreting section 157a in the light of the reasons that induced its adoption, it seems clear that when the tax allowed to be levied was limited to 20 cents, it was contemplated that no debt that was created should exceed an amount that this tax could pay within the time fixed for the maturity of the debt. It is not to be supposed that the legislature in submitting the section, or the people in adopting it, intended that an indebtedness to the extent of 5 per cent. of the assessed value of the property of the county might be created unless the 20 cent tax was sufficient to pay it, or that it was intended that a debt might be created without providing at the same time some enforcible means for its payment.

The lower court, however, was of the opinion that the authority to incur an indebtedness "not in excess of 5 per cent. of the value of the taxable property therein" was the only limitation on the amount of indebtedness that might be created, although such a debt could not be paid by the 20 cent tax, and reached this conclusion by assuming that the fiscal court could add to the 20 cent tax a sufficient sum out of the 50 cent tax levied under section 157 to make a fund large enough to take care of the 5 per cent. indebtedness. But the fault in this reasoning lies in the fact that the fiscal court is under no constitutional or statutory obligation to appropriate to the payment of the debt any part of the 50 cent tax; therefore, if the fiscal court did not choose to use any part of the 50 cent tax for this purpose, the inevitable result would be that if the 20 cent tax would not pay the debt, the county could create a debt without being under any binding or enforcible duty to provide a means for its payment. Clearly, a construction that would

authorize such a condition ought not to be adopted because no municipality should be permitted under any circumstances to create an indebtedness without also being under an authorized and enforcible duty to provide for its payment in such manner as that it might be compelled to pay it.

It was not the purpose of the legislature in the enactment of this section of the constitution to permit any indebtedness to be created under and by virtue of its provisions that could not be paid by the amount raised under a levy of 20 cents within the time fixed for the final liquidation of the bonds that may be issued. The section does not prescribe the time for which bonds issued under it may run. But the statute fixes this time at thirty years, and within thirty years from the issual of the bonds they must be paid. So that, in estimating the amount of indebtedness that may be created under section 157a, there must be constantly kept in mind the proposition that no indebtedness can be lawfully created under this section that cannot be paid by the tax authorized by the section within the time fixed for the final liquidation of the indebtedness.

We do not mean, however, to hold that there can only be one issue of bonds outstanding at any one time. It is immaterial how many different issues of bonds authorized by the vote of the people there may be outstanding at the same time, provided, always, that the total of these outstanding bonds does not at any time exceed in the aggregate an amount that can be paid by the 20 cent tax levy alone. If a county can pay by this 20 cent tax levy $400,000.00 of bonds, the issual of this amount of bonds may be authorized by two or three or four votes of the people at as many different elections. So that we find no objection to the fact that the fiscal court of Bell county, under authority of a vote of the people, issued $250,000.00 of bonds at one time and subsequently issued $150,000.00 of bonds. The only limitation in this respect is that however many issues there may be, or whatever amount of bonds may be authorized by any vote of the people, the total amount outstanding at any one time must be within the limitations we have prescribed.

In short, in the creation of the indebtedness, no account whatever must be taken of what can be or will be applied to its payment out of the state aid fund or out

of the 50 cent tax levy. The amount of the indebtedness must be so fixed as that it can be paid within the time specified by the 20 cent tax levy in and of itself without looking to any other source of revenue or any other means by which funds can be secured to aid in paying the indebtedness. However, when an indebtedness so created is thus limited, the fiscal court, as we have heretofore said, may apply to its payment money derived from the state aid fund and out of the 50 cent levy, or from any other source.

Section 157a, in so far as indebtedness for road purposes is concerned, must be treated independent of any other section in the constitution. It is a complete section in itself. It permits, by a majority vote, the creation of an indebtedness and the levy of a tax rate not exceeding 20 cents, in addition to the tax rate authorized by section 157. And all the money raised by the 20 cent tax must be applied to the payment of the interest and principal sum of the indebtedness created under this section until this indebtedness has been satisfied in full. Until the indebtedness has been satisfied in full, not one cent of the tax collected under the levy authorized by section 157a can be used for or appropriated to any other purpose. If any part of it, however small, is used or appropriated by the fiscal court for any other purpose, then the members of the fiscal court so misusing or misappropriating it violate section 4281u of the Kentucky Statutes and become subject to the civil as well as the criminal liability therein provided.

The petition in this case does not show how much these two bond issues exceed the sum that can be raised, before the final maturity of the bonds, by a 20 cent tax, and therefore we are unable to say to what extent the bond issue of $150,000.00 was unauthorized. This, however, is a mere matter of calculation, to be computed on the basis of how much can be realized by a 20 cent tax on the assessed value of the taxable property of the county according to the assessment last preceding the bond issue. And no bonds in excess of the amount that can be paid with a 20 cent tax on this assessment, and within the final maturity of the bonds, can be issued by the fiscal court.

Wherefore, the judgment is reversed, with directions to enjoin the fiscal court from issuing any bonds author-

ized by the election held in May, 1916, which, if added
to the previous issue of bonds, would create an indebt-
edness exceeding the amount that can be paid, both prin-
cipal and interest, by the 20 cent levy within the time
fixed for its final payment.