## Moberley v. Deatherage.

(Decided January 25, 1921.)

### Appeal from Madison Circuit Court.

Deeds—Reconveyance—Contemporaneous, Collateral Agreement to Convey.—One who sells and conveys land by a general warranty deed without reservation therein cannot have a reconveyance of the land in the absence of fraud unless there be a contemporaneous, collateral agreement to reconvey and then only upon clear and convincing proof of the existence and contents of the collateral agreement.

A. R. BURNAM and J. J. GREENLEAF for appellant.

JOHN NOLAND and J. P. CHENAULT for appellee.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

On December 8, 1903, appellant Moberley conveyed by deed of general warranty to appellee Deatherage a tract of land of about 100 acres near Moberley Station in Madison county for a recited consideration of $3,650.00, which was actually paid by Deatherage to Moberley. The grantor put the grantee in possession which continued uninterruptedly until the beginning of this action on December 7, 1918, by Moberley against Deatherage to have a reconveyance of the lands on the averment:

"That simultaneously with the execution and delivery of said deed the defendant, N. B. Deatherage, executed

and delivered to this plaintiff, a writing by which he promised and agreed to reconvey said property to this plaintiff at any time this plaintiff paid him back the principal of the purchase price, $3,650.00, it being understood and agreed that the use of the property would offset interest and taxes, which writing has been lost or destroyed.''

An amended petition avers that the original agreement to reconvey the said land was oral, but was shortly after the conveyance reduced to writing.

The answer admitted the purchase, conveyance and possession of the land, but denied the agreement to reconvey and the execution and existence of the writing. Therefore the only controverted facts are the agreement to reconvey the land and the execution and existence of the alleged writing evidencing such agreement. The evidence shows that Moberley was an improvident, wasteful heir to a large landed estate; that he and Detherage were slightly related by blood and that they were very intimate friends; that Deatherage, a good business man, advised Moberley concerning the management of his business and Moberley confided in and relied on Deatherage for counsel and assistance. The two men were associated together in many ways, and Deatherage purchased other tracts of land from Moberley, but none of them is in controversy. About four years before the commencement of this action and some ten years after the deed was made in 1903, Moberley, who was then confessedly an inebriate, made a deed of trust whereby he conveyed the major portion of his estate to Deatherage as trustee, and this is pointed to with confidence by appellant to aid in establishing a trust relation between the parties to this action at the time of the making of the deed in 1903 assailed in this case.

The appellant Moberley says that he has no recollection of Deatherage promising or agreeing to reconvey the lands in controversy before the deed was made or at any time until the writing evidencing such agreement was voluntarily given to appellant by appellee a day or so after the land transaction had been closed, but Deatherage testified in substance that he told Moberley at the time of the making of the deed for the land that he would reconvey him the land any time in the future Moberley wanted to buy same, but not at the same price as appellant now claims the alleged lost writing pro-

vided. So it appears from both parties that there was some talk between them about a reconveyance of the land, at or near the time of the making of the deed, but there is a sharp conflict as to what was the purport of this conversation or agreement, if indeed there was such an agreement.

We are greatly aided in a decision on the facts, on this particular question, by the evidence of Moberley, concerning the land trade he was about to make with Dr. Vaught, involving the same land, only a day or so before the deed was made on December 8, 1903. Moberley says he priced the same tract of land to Dr. Vaught for $3,000.00 and Vaught was about to buy it when Deatherage hearing of the trade, came to Moberley to dissuade him from making a sale of the land at all, but when he found Moberley determined to sell the land, he said to Moberley, if you sell then sell it to me and I will sell it back to you later if you want it.

Moberley testifying in his own behalf admitted he was offering to sell the land to Dr. Vaught for $3,000.00 without an agreement to reconvey and that Deatherage gave him more money, but there is no averment in the petition or evidence to show that Moberley sold the land to Deatherage because of his promise to reconvey, if he did do so, or that such an agreement or promise induced, or influenced him in any way to make the conveyance to Deatherage or that there was any consideration whatever for such a promise to reconvey the land. On the contrary there is very strong evidence that the appellant would have conveyed the land to either Dr. Vaught or Mr. Deatherage for the price of $3,650.00 without an agreement by the vendee to reconvey the property. Even if Deatherage intended for Moberley to have a reconveyance of the lands, as we feel sure he did, yet there is no evidence of an agreement between the contracting parties entered into at the time of the making or closing of the deal, that the grantee would reconvey on demand of the grantor, the only evidence to that effect being the evidence of Deatherage that he was willing to reconvey for a fair consideration and the alleged voluntary writing given by Deatherage to Moberley, a day or so after the transaction had been completed. Deatherage says there was no agreement to reconvey the land either at the time of the sale or at any time except he said to Moberley he would do so if Moberley so desired, and there is no

evidence whatever that Moberley either asked such an agreement or acquiesced in the suggestion made by Deatherage to make a reconveyance. In fact Moberley had fully made up his mind to sell the tract of land and he was not seeking or asking an agreement to reconvey the property which he was selling. Therefore, as there was no such agreement in fact, or no consideration to support such an agreement had there been one, the trial court properly dismissed plaintiff's petition.

One cannot have a reconveyanc of land in the absence of fraud except upon clear and convincing proof of the existence and contents of the collateral agreement.

But it is insisted that the parties were not dealing at arm's length; that there was a trust relation between them which imposed a duty upon Deatherage to protect and preserve the rights of Moberley. While Deatherage and Moberley were intimate friends and Deatherage was helping and advising Moberley in the conduct of his business there is nothing about the business transaction under consideration which has the slightest appearance of betrayal of trust. Moberley was about to sell the land without the advice of Deatherage for $3,000.00 and without the privilege to repurchase it at the same or any other price. Deatherage advised him not to sell, told him he did not need to sell, and that he should keep the land which was a part of the old home place. When Moberley made it plain he was going to sell in spite of the advice of Deatherage, appellee then told him he would give him more than $3,000.00, the price asked by Moberley, and the deal was closed and deed made. Is there anything wrong about such a contract even though a friend buys the land rather than have a stranger buy it at a less price?

There was no trust relation between the parties at the time of the deal and making of the deed with respect to the lands in controversy. A trust deed was made about ten years after the deed in question and of course cannot relate back to the time of the making of the deed here assailed. Moreover it did not relate in any way whatever to the lands in question. It is not contended that Moberley was incapacitated to make a deed in 1903, when he sold and conveyed the lands to Deatherage, and there is no charge of fraud or mistake in the deed, which is a full and complete conveyance of the fee simple title to the lands without reservations or defeasance. The

chancellor, in dismissing the petition, in effect held that no written agreement was made between Moberley and Deatherage for a reconveyance of the lands, and the statute of frauds would intervene to prevent the enforcement of a verbal agreement had there been one, which is quite doubtful.

According to the averments of the petition, Deatherage agreed to reconvey the lands to Moberley "At any time the plaintiff paid him back the principal of the purchase price." This in effect is an averment that Deatherage agreed to reconvey to Moberley on demand if the demand be accompanied by the purchase price of $3,-650.00. If there was such a written agreement the obligee would have been obliged to make a demand for reconveyance within a reasonable time, and what was a reasonable time was one of fact to be found by the chancellor from all the evidence. Almost fifteen years elapsed between the alleged making of the promise and the demand to reconvey. It is likely the chancellor did not consider this a reasonable time in which to ask a reconveyance under the alleged terms of the lost writing, and for this reason found against appellant Moberley. If so we would not be inclined to disturb the judgment of the court, for we are of the opinion that fifteen years is too long, in a case like this, to wait before requesting a reconveyance.

The chancellor found the facts against the appellant Moberley and we are not at liberty to disturb such finding unless it be against the weight of the evidence. The evidence in many respects is well balanced, but upon the question of the agreement to reconvey the land, especially the contemporaneous oral agreement, the evidence, we think, preponderates in favor of the appellee Deatherage.

The judgment is therefore affirmed.