## Smith v. Livingston County.

(Decided June 20, 1922.)

### Appeal from Livingston Circuit Court.

1    Counties—Elections—Previous Election Not Bar to Another Submission.—An election under section 4307, Kentucky Statutes, may be ordered to be held, whenever the requisite number of freeholders petition therefor. A previous election upon the same question although recently held is not a bar to another submission.

2.    Counties—Elections—Designation of Roads and Bridges.—A petition for an election under section 4307, Kentucky Statutes, is not invalid, because it designates the roads and bridges to be constructed with the bonds, if authorized, where such condition is not prohibited by statute, and the order for the election, if it contains the conditions prescribed in the petition, is not invalid.

3.    Counties—Elections—Petition for Bearing no Date.—A petition for an election under section 4307, Kentucky Statutes, is not invalid, because bearing no date. The date of it is when it is filed in the county court.

4.    Counties—Elections—Court May Fix Date.—The petition for an election under section 4307, Kentucky Statutes, is not invalid because it does not name a day for the election, but the court may fix the date, within the time prescribed by law.

5.    Counties—Elections—Separate Petitions.—A number of separate petitions, exactly similar in their contents, will be considered one petition, under section 4307, Kentucky Statutes, and if all of them together are subscribed by the requisite number of qualified persons, it will be sufficient to give the court jurisdiction.

6.    Counties—Elections—Advertisement.—Where the order of the county court calling the election properly directs the sheriff as to the manner of its advertisement, it will be presumed that the election was properly advertised, in the absence of any averment or proof to the contrary.

7.    Counties—Elections—Duty of Sheriff.—The sheriff who holds an election called under section 4307, Kentucky Statutes, is not required by law to make any report of the manner, in which he held it.

8.    Counties—Elections—Preparation of Ballots.—Where the order of the county court calling an election under section 4307, Ken-

tucky Statutes, directs the county clerk to prepare the ballots, it will be presumed, in the absence of any showing to the contrary that they were properly prepared.

9.  Counties—Elections—Certification of Result.—Neither the county court, nor the election commissioners have a duty, to adjudge what was the result of an election held under section 4307, Kentucky Statutes. The election commissioners must certify the result intelligently and place it upon the records which the law requires them to make for that purpose.

10.  Counties—Elections—Certification of Result.—The election commissioners are not required to certify the result of an election held under section 4307, Kentucky Statutes, to the fiscal court.

11.  Counties—Creation of Indebtedness—Construction of Roads and Bridges.—Under section 157a of the Constitution and section 4307, Kentucky Statutes, the fiscal court may be authorized to create an indebtedness for the building, construction and reconstruction of roads and bridges, not in excess of five per centum of the assessed value of the property of the county, subject to taxation for county purposes, but, the indebtedness, if not bonded, must not be greater than the proceeds of a twenty cents tax levy will pay, in the year in which the indebtedness is created, and if bonds are issued under section 4307, supra, a larger amount of bonds can not be issued than the twenty cents tax will pay the interest on and create a sinking fund, which will liquidate the principal, within the time, they are to be paid.

12.  Counties—Creation of Indebtedness—Bonds—Taxation.—The twenty cents tax, authorized by section 157a of the Constitution can not be used for any purpose except to pay the interest on the bonds authorized by section 4307, Kentucky Statutes, if any, and to pay the principal when due, but, if there is more of the funds arising from such a tax, than is necessary to take care of the bonds, then it may be appropriated for any indebtedness arising from the construction of roads and bridges.

13.  Counties—Creation of Indebtedness—Bonds.—The fiscal court may, if it sees fit, appropriate a part of the funds arising from the fifty cents tax for general purposes, authorized by section 157 of the Constitution, to taking care of bonds, authorized by section 157a of the Constitution, but, it is not required to do so

14.  Counties—Elections—Creation of Indebtedness.—An election authorizing the fiscal court to create a debt, does not create the debt, but, the debt is made, when the indebtedness is incurred by issuing bonds, or entering into some obligation to pay, and the amount of indebtedness which is authorized by sections 157, 157a and 158, of the Constitution must be ascertained from the value of the taxable property, when a debt is incurred.

15.  Counties—Construction of Roads and Bridges.—In ordering the construction of roads and bridges and making appropriations therefor, the powers of the fiscal court are legislative, and it can set

aside or amend such orders, if contractual rights have not become involved.

CHAS. FERGUSON for appellant.

J. R. WELLS for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—
Affirming.

This was an action by a citizen and taxpayer of Livingston county to enjoin the fiscal court and its agents from issuing, offering or selling $50,000.00, par value, in amount of the bonds of the county, which were alleged to have been authorized by the votes of a majority of the legal voters of the county, cast at an election held on the 31st day of January, 1920. The election was a proceeding under section 4307, Kentucky Statutes, and section 157a of the Constitution for the purpose of obtaining the consent of the electorate of the county, to the making and and selling of $200,000.00 of county bonds, the proceeds to be applied to the building, construction and reconstruction of public roads and bridges of the county, as authorized by section 157a of the Constitution. The necessary majority of the legal voters appearing to have given their approval to the proposition, on the 3rd day of November, 1921, the fiscal court made an order directing that $50,-000.00 in amount of the bonds authorized, be offered and sold for the purpose of providing the means for the construction of the road designated as the Ohio River Federal Aid Highway, which runs through the county, and, also, a road designated as the Central Highway from Smithland to Iuka, which are points in the county. The bonds have not yet been executed or sold, and to restrain the fiscal court from so doing, the appellant by his petition presents many alleged reasons by virtue of which he contends that the bonds were never legally authorized; and if authorized, the purpose to which the proceeds of the bonds directed to be sold are to be applied is illegal, and the fiscal court is without authority to so appropriate the proceeds. The circuit court sustained a general demurrer to the petition as amended and dismissed it, and from the judgment the plaintiff in the action has appealed.

The objections to the validity of the election upon which the authority to issue the bonds depends, will be considered in their order.

(a) It is urged that it was unlawful to order the election because an election had been held upon the subject on the 4th day of November, 1919, which resulted in a majority adverse to the proposition to issue bonds, and the election in controversy was ordered on the 1st of December, 1919, thereafter. This objection appears to be without merit, since the statutes governing such elections do not provide that an election resulting adversely to a proposition to issue bonds for road and bridge purposes, shall be a bar to the holding of such election for any length of time thereafter, and the fact that it is entirely silent upon the subject would seem to indicate that the intention of the lawmakers was to the contrary. Besides the averment of the petition as amended failed to show that the proposition submitted at the election held on November 1st, 1919, was the same as that submitted on January 31st, 1920.

(b) It is further contended that the petition asking the election, contained conditions not authorized by law, and that the county court should have rejected the petition, and refused to order the election, or, else, should have embraced all of the conditions upon which the issual of the bonds was sought, in the order calling the election, which latter thing, it is averred, the court did not do. This argument seems to go to the extent of insisting that the conditions contained in the petition being illegal, the county court was without authority to make the order calling the election with the proposition embracing the conditions, and if it ignored the conditions in the order, the submission was unauthorized. The petition requested the county court to submit to the voters the proposition to authorize the fiscal court to issue and to sell the bonds, ''the proceeds to be used in the construction of the proposed federal highway known as the Ohio river route, through said county from McCracken county to Crittenden county, crossing the Cumberland river at Smithland; the construction of the county seat connection with Lyon county at Iuka; with Marshal county at Tennessee river; with Pope county, Illinois, at Berry ferry; with Hardin county, Illinois, at Carrsville.'' It then provided that if any funds were left over from the construction of the roads mentioned, they should be applied to other designated roads in the county. True, the statute, section 4307, Kentucky Statutes, does not provide that freeholders seeking the submission of the question of creating an indebtedness in the way of bonds for the building, construc-

tion and reconstruction of roads and bridges, should specifically authorize the inclusion in the petition of the names of the roads upon which the proceeds of the bonds shall be used, but the statute does not prohibit such designation, and is therefore not illegal or unlawful. In Percival v. City of Covington, 191 Ky. 337, it was held that inclusion of a condition of the bonds in the order which submitted the proposition for the creation of a debt, although not required to be in the order of submission, was not unlawful, and being a condition upon which the voters gave their assent to the creation of the debt, could not be ignored. In Scott v. Forrest, 174 Ky. 674, followed by Hall v. Montgomery Co., 192 Ky. 716, and Reynolds v. Bracken County, 192 Ky. 180, it was held that if previous to an election upon a proposition to create a debt for which bonds of the county were to be issued, the fiscal court should make an order designating the roads in the construction of which the proceeds of the bonds would be expended, it was in the nature of a contract with the electorate, and could not be ignored. Hence, in the instant case, the inclusion of the roads to be constructed by the proceeds of the bonds appearing in the petition seeking the submission, was not illegal, nor if such condition had been stated in the order of submission would the order thereby have been invalidated. The order of the county court submitted the proposal to the electorate for their assent to issue and sell the bonds "in accordance with said petition," and, hence, it appears that the order of submission did not ignore the conditions upon which the petitioners sought the submission and the appropriation of the proceeds of the bonds, as provided in the petition, will not in any way violate the terms and conditions upon which the assent of the voters was obtained.

(c) The fact that the petition filed in the county court seeking the submission was not dated is immaterial, as the statute does not require it to be dated, nor is there any requirement that the petitioners attach a date to their signatures. The date of the petition is when it is filed in the county court.

(d) The petition did not name any day upon which it was desired that the election should be held. It did request that the election be held at the earliest possible date upon which under the law it could be held. The court ordered it held at the earliest possible date, which under the law it was authorized to be held fixing a date. It has

been held in Denton v. Pulaski Co., 170 Ky. 33; and in Pendleton v. Letcher Co. Fiscal Court, 194 Ky. 688, that the omission from the petition of the day or days upon which the election should be held was immaterial, as the county court was authorized to fix the date of the election within the time provided by law, and such was done in the instant case.

(e) The petition to the county court consisted of twenty-four separate petitions, exactly the same in their contents, and neither one of them was subscribed by as many as one hundred and fifty freeholders, although all of them contained the signatures of several hundred freeholders, and this fact is referred to as a fatal defect in the proceedings. The signatures to the various copies of the petition, were the requisite number. However, under such facts, the county court may treat all the petitions as constituting one, and the various copies as being parts of the one petition necessary, and when all of them are subscribed by the requisite number of freeholders and legal voters, jurisdiction is conferred upon the court to order the election to be held. Hopkins v. Dickens, etc., 188 Ky. 377; Smith v. Patton, 103 Ky. 444; Tousey v. DeHuy, 23 K. L. R. 458.

(f) The order of the county court providing for the election directed the sheriff to advertise the election and the objects of it for thirty days next before the day upon which it was to be held in a newspaper having the largest circulation in the county, and by four printed handbills posted in each precinct, and one at the court house door. After the election the sheriff made a report of his actions to the county court, and while the writing returned by him stated that he posted the written handbills as directed and required, he made no mention of having advertised the election in the newspaper. The petition alleges that at that time a newspaper was published in the county. The plaintiff and appellant does not aver that the notice of the election and its purpose was not published in the newspaper, nor does he allege that the election was not advertised in any way required by law, but contents himself with averring that if it was done, only, in the manner in which the sheriff reported, that the advertising was insufficient. The order did not require the sheriff to make any report, nor is any report by the sheriff required by the statute. In the instant case, it was a voluntary act upon his part, and does not amount to evi-

dence, as to the manner of its doing. In as much as the plaintiff fails to aver or to contend that the advertisement was not made in a newspaper, and the sheriff is presumed to have done his duty, in the absence of evidence as to how it was done, it will be conclusively presumed that the advertising was made in a newspaper as by law required.

(g) The order of the county court providing for the election, directed the county clerk as to his duties, including the questions to be printed upon the ballots, but failed to direct him to have the word "yes" and the word "no" following the question, with a square opposite each wherein the voter might indicate his wish by stamping with the stencil. The statute directs the manner in which the ballots for such elections shall be prepared, and the order of the county court directed the clerk consistently with his duties, so far as the order made directions. In the absence of any averment, or showing to the contrary, the clerk will be conclusively presumed to have prepared the ballots in accordance with the law upon the subject. That he did so, there can be no doubt, as the certificate of the election commissioners shows that so many voted "yes" and the others "no."

(h) It is insisted that because neither the election commissioners nor the county court adjudged that the result of the election was the assent of the required number of electors, voting, that the debt should be incurred and bonds issued therefor, that the proceedings were so irregular that no authority was conferred to issue and sell the bonds. It is not a duty of the election commissioners, nor have they the power to decide that any such election and proposal has been assented to or denied. Their only duty is to certify the result of the election—that is how many votes were cast for the proposal and how many against it. Denton v. Pulaski, 170 Ky. 33. Neither does the county court have any duty in the premises. An adjudication by it that the proposal had been assented to or rejected, would be without any force or virtue. The fiscal court, alone, has any duty to perform after the election commissioners have certified the result of such election. The certificate of the election commissioners is, in substance, to the effect that they canvassed the returns of the election for the purpose of taking the sense of the voters as to "whether they were in favor of issuing bonds to the amount of $200,000.00

of said county for road and bridge purposes, and find the result as folows: 'Number voting 'yes' 1185, number voting 'no' 751.'' The result of the election, according to the certificate, is perfectly clear, and there is no contention that it was otherwise.

(i) The election commissioners did not send to the fiscal court a certificate of the result of the election, and it is claimed that such fact is fatal to its validity. The statutes governing such elections, nor elections generally, make such requirement. The commissioners make a certificate of the result and same is recorded in a book containing their proceedings, and of which the clerk of the fiscal court is custodian, and which is open for the inspection of the court or any citizen. It would probably help the apparent regularity of the proceedings, if the commissioners would certify the result of such elections to the fiscal court, and that court should cause it to be spread upon its records, but there is no statute requiring it, but the evident prudence of such an act frequently causes it to be done. In the instant case, a certificate of the result of the election, signed by the election commissioners, was sent to the county court, and by its order spread upon its records.

The foregoing constitute the grounds upon which it was contended that the election was invalid, and did not give authority to the fiscal court to issue and sell the bonds, but the grounds, as appears, are all insufficient. Upon other grounds it is insisted that for reasons other than the invalidity of the election the bonds can not be lawfully issued and sold, and these latter will now be considered.

(1) It is averred that $200,000.00 is more than five per centum of the value of property in the county assessed for county taxation purposes. Section 157a of the Constitution limits the amount of bonds which may be voted, issued and sold by the authority of that section to five per centum of the assessed value of the property of the county, but there is the further limitation that the amount of the bonds which can be issued must be limited to such an amount that the twenty cent tax authorized by that section will pay the interest and provide a sinking fund which will liquidate the bonds within the time wherein the bonds will become due, and the bonds may not run less than five nor more than thirty years, during which time they may be redeemed at the pleasure of the fiscal court. Bird v. Asher, 170 Ky. 726. The fiscal court

may, if it sees proper to do so, appropriate any portion of the fifty cents per hundred tax which it is authorized to levy for general county purposes, under section 157 of the Constitution, to paying the interest on and creating a sinking fund to redeem the bonds issued under 157a of the Constitution, but it is not obliged to do so, and hence the bonds which can be issued under the latter section must be limited to such an amount as the twenty cent tax will pay the interest on and create a sinking fund for and pay off within the time they are authorized to run. Mitchell v. Knox Fiscal Court, 165 Ky. 543; Bird v. Asher, *supra.* It should, also, be kept in mind that an election authorizing the issue of bonds does not create a debt, but the debt is created when the bonds are offered and sold, and hence the amount of bonds which can be issued and sold depends upon the amount of taxable property at the time they are sold. Bosworth v. Middlesboro, 190 Ky. 296; Louisville v. Parsons, 150 Ky. 420; Frost v. Central City, 134 Ky. 433; Young v. Fiscal Court, etc., 190 Ky. 604. The bonds which are now proposed to be issued, being only $50,000.00 in amount and to run for fifteen years, and it not appearing that the twenty cent tax will not pay the interest and create a sinking fund which will discharge them within the time they have to run, the objection to their issual and sale on that account will be presumed to be without merit.

(2) The order of the fiscal court directing the sale of the bonds designates as its purpose the intention to apply the proceeds to aid in construction of the "Ohio River Route Federal Aid Highway" and the highway from Smithland to Iuka, and it is insisted that there is no authority on the part of the fiscal court to appropriate funds to aid in the construction of a road belonging to a primary system and which the state and federal governments have undertaken, and that such construction is not an obligation of the county. The right to issue the bonds in controversy was assented to by the voters among other things for the purpose of giving aid to the construction of the roads mentioned, and under sections 4356t-3 and 4356t-5, Kentucky Statutes, authority is given to a county to contribute to a project which the state and federal governments have undertaken.

(3) Section 157a of the Constitution provides that an election held under that section with the result favorable to incurring the indebtedness, carries with it the power

on the part of the fiscal court to levy and collect an annual tax of not exceeding twenty cents upon each one hundred dollars of the assessed valuation of the county, for the purpose of paying the interest and creating a sinking fund to pay the indebtedness. This levy may be made in addition to the tax of fifty cents for general purposes, provided for by section 157, *supra,* and section 4308, Kentucky Statutes, provides that when bonds of the county are sold for road and bridge purposes, the fiscal court shall levy a tax to provide for the interest and create a sinking fund to pay the principal. Section 4307b-1 to 6, Kentucky Statutes, inclusive, were enacted by the authority of section 157a, *supra,* to regulate the manner of authorizing the twenty cents additional tax for the construction of roads and bridges, when it was desired to levy same without a bond issue, but when bonds are issued representing an indebtedness created under section 157a, *supra,* the twenty cents tax, or a sufficiency of it, levied under section 4307b-1 to 6, inclusive, must be appropriated to pay the interest on the bonds, and to create a sinking fund for their redemption, regardless of when the tax was authorized. Bird v. Asher, *supra;* Collier v. Bourbon County Fiscal Court, 188 Ky. 491. The present proposed bond issue was authorized under section 157a, *supra,* because the voters assenting to the proposal appear to have been only a majority, and not two-thirds of those voting. April 6, 1918, by an election held, the fiscal court was authorized to levy an annual tax of twenty cents for ten years for road and bridge purposes, under section 157a, *supra,* and hence, a sufficiency of the tax to pay the interest on and create a sinking fund to redeem the bonds at maturity must be set apart for that purpose, before the bonds can be issued, and no part of that tax can be used for any other purpose, except such part of it as may not be necessary to take care of the bonds. It is now insisted that the bonds authorized by the election on January 1, 1920, cannot be issued or sold, because the funds arising from the twenty cents tax levy authorized by the election of April 6, 1918, has been otherwise appropriated by an order of the fiscal court, and can not now be applied to pay the interest on the bonds, and to create a sinking fund for their final liquidation, and while the fiscal court may, if it desires, appropriate a part of the fifty cents levy authorized by section 157, *supra,* to take care of the bonds, it can not

be required to do so, and, hence, if the bonds were issued there would be no method of enforcing their payment, and to issue bonds without making provision for their final payment is not allowable. The trouble has arisen in the following way: In 1919, as is gathered from the records of the fiscal court, the latter court proposed to the citizens, though there is no order showing that fact, to construct a road along such highway as upon which the citizens would donate for its construction the greater sum, before the court would build any other roads by tax levies and aid received from the state, and citizens along the road leading from Smithland to Iuka, a distance of twelve miles, having offered to contribute $5,137.50 to the purpose of building a road between those points, the fiscal court made an order that all the proceeds of the tax authorized by the election of April 6, 1918, and all state and national funds received for road purposes, from year to year, be applied to building the road from Smithland to Iuka, until that road should have been completed. A number of citizens then entered into an obligation to the county court, conditioned that they would guarantee the payment of the subscriptions if the road from Smithland to Iuka was constructed as ordered by the court, and would pay the money subscribed as the construction progressed, and as the court demanded, and this obligation was accepted by the court. The fiscal court had previous to that time determined to build that road with "state aid," as was then provided for, and had made application therefor. Again on June 10, 1920, the construction of this road was under consideration, and the fiscal court, at the request of the representatives of the subscribers of the donations, deferred operations in regard to it until it could be ascertained if state and federal aid could be secured, and in the event such aid could not be obtained, they would consider again the project of constructing the road, and it was agreed that the guarantee executed by the citizens and the contract made between the court and them should remain binding until such time. On the 6th and 17th days of May, 1921, according to the orders of the fiscal court, a proposal was made to the county by the State Highway Commission to the effect that if the county would provide means to pay one-fourth part of the cost of constructing the road, that the commission would immediately begin its construction, and would expend an equal amount in the construction of the road each year until it was finished, and

would maintain it after the construction, free of cost to the county. This proposition was accepted by the court, which ordered $25,000.00 in its road fund, the subscriptions of $5,137.50 and the proceeds of the twenty cents tax for 1921, in all about $40,000.00, to be placed at the disposal of the commission, and further pledged that the remainder, about $9,000.00 would be furnished from a sale of bonds. The record does not definitely show whether the highway commission accepted the offer of the court and proceeded with the construction, but it is assumed that it did, since the petition avers that the commission has not constructed or contracted for the construction of but four miles of the road, and it is presumed that it will continue to the completion of the road in the next three years. A scrutiny of the obligation entered into by the donating citizens will show that, although the order of the fiscal court setting apart the twenty cents annual tax each year for the construction of the road until its completion, was set out in the writing signed by them, their obligation was to pay the donations if the road was constructed in accordance with the order of the court. The construction of the road was the prime purpose agreed upon between the court and the citizens, and not with what means it should be constructed. In the construction of roads and making appropriations therefor, the fiscal court acts in a legislative capacity, and it may amend or set aside its orders upon such subjects where no contractual rights are involved. Commonwealth v. Beauchamp, 136 Ky. 227; Crittenden Co. v. Shanks, 88 Ky. 475; Scott v. Forrest, *supra*. The only contract here between the donating citizens and the fiscal court was that the court would construct the road, but the matter of appropriations made to carry the contract into effect were matters of administration which the court could change. It will not be overlooked that the order directing the sale of the bonds provides that in part the proceeds shall be applied to constructing the Smithland and Iuka road, and if the county carries out its contract to construct the road, the donating citizens will have no cause of complaint when in place of the twenty cents tax levy the court applies a portion of the proceeds of the bonds, which in one sense are the proceeds of that levy, to completing its contract to build the road. Hence, it is concluded that the twenty cents tax or a sufficiency for that purpose, must be appropriated to paying the inter-

est on and creating a sinking fund for the liquidation of the bonds proposed to be issued and the court is authorized to do so.

The judgment is therefore affirmed.