J. A. ZIMMERMAN *et al. v.* TOWN OF NEW MARTINS- VILLE *et al.*

(CC 566)

Submitted September 22, 1936. Decided October 13, 1936.

*Paul J. Shiben,* for plaintiffs.
*Walter F. Ball,* for defendants.
*W. J. Brennan,* for F. F. Frazee, intervening petitioner.

KENNA, JUDGE:

This is a certified case from the Circuit Court of Wetzel County in which J. A. Zimmerman and Elmer Fawcett, plaintiffs, and F. F. Frazee, intervening petitioner, seek to enjoin the sale and delivery of $64,000.00, par value, of the municipal bonds of the town of New Martinsville. There was a demurrer to the bill as well as to the intervening petition, both of which were overruled, and upon the defendants filing their answers, demurrers to them were filed and were sustained. The questions certified arise upon the sufficiency of the bill of complaint and intervening petition and the sufficiency of the answers filed by the defendants.

The points to be decided turn upon two main propositions: (1) whether municipal bonds properly authorized and duly issued, but not sold and delivered, prior to the adoption of the Tax Limitation Amendment, constitute a municipal indebtedness pre-existing that amendment so that the debt service levies to meet them may be laid in excess of the limitations imposed by the Legislature pursuant to the amendment; and (2) whether the debt service levies for municipal bonds must be direct property levies or may be comprised in part of direct property levies and the remainder made up of other revenue of the municipality.

In June, 1928, the town of New Martinsville passed an ordinance calling a municipal election at which there was to be submitted the question of the approval of $124,-000.00 in municipal bonds for the purpose of acquiring a municipal electric light plant. In July, the election was held and the bond issue approved. On August 6th, an ordinance was passed directing the issuance of the $124,000.00 worth of bonds and the submission to the Attorney General of all of the legal questions arising. On February 12, 1929, an ordinance directed that the entire issue of bonds be offered to the Sinking Fund Commission. March 4, 1929, an ordinance was adopted showing the waiver of the Sinking Fund Commission of its right to purchase the entire bond issue and ordering the

sale of $50,000.00 worth of the bonds, specifying the serial numbers. The $50,000.00, par value, in bonds from the authorized issue of $124,000.00 were actually sold and delivered. Then, nothing was done until July 10, 1935, when another ordinance was passed reciting the previous action of the council and the sale of the $50,-000.00 worth of bonds in 1929, and the fact that of the remainder of the $124,000.00 worth of bonds originally authorized, $10,000.00 par value had already matured, and ordering the sale of the remaining $64,000.00 worth of bonds. In the meantime, of course, the Tax Limitation Amendment, adopted in the fall of 1932, had become effective. The bill of complaint and intervening petition, in much fuller detail, of course, allege this sequence of events and depend for the relief sought upon their averment that the municipality cannot meet the debt service for the bonds in question without imposing a property tax exceeding the legislative limitations imposed upon it pursuant to the Tax Limitation Amendment.

So far as the first question is concerned, we are of the belief that it is decided by comparatively simple principles. A bond speaks from the date of its delivery, which is one of the indispensable elements for putting it into effect. The authorization of the bond issue creates no contractual obligation. *Neale* v. *County Court*, 43 W. Va. 90, 27 S. E. 370; *List* v. *City of Wheeling*, 7 W. Va. 501; *Frost* v. *Central City*, 134 Ky. 434, 120 S. W. 367. In this case, the town of New Martinsville had delivered none of the $64,000.00 additional bonds prior to the adoption of the Tax Limitation Amendment. The town had received no consideration for the bonds and hence owed no indebtedness that they represented. It seems perfectly clear that as to the $64,000.00 of bonds now sought to be sold and delivered, there was no indebtedness actually incurred by the town prior to the adoption of the tax amendment. Any indebtedness based upon these bonds, therefore, would have to be incurred subsequent to the adoption of the Tax Limitation Amendment; and since that is so, the town would be obliged to

provide debt service for those bonds by a direct tax within the limitations.

The second point involved turns upon the sufficiency of the answer. Paragraph nine of the bill of complaint contains specific averments as to the total assessed valuation of all of the property in the town of New Martinsville for the year 1935, as well as the total assessed valuation of property of each class as defined by the enabling act. This section of the bill further avers in detail the exact levies laid by the town of New Martinsville upon each class of taxable property for the year 1935, and shows in detail that the limitations imposed by the enabling act were exceeded for that year. It avers further that from the year 1935 to and including the year 1955 the existing indebtedness of the town of New Martinsville, which it sets out fully, will require levies in excess of those allocated by the enabling act. These averments are expressly admitted in one part of the answer filed by the defendants, while in another part of that answer, there is a general denial that the issuance of the $64,-000.00 in additional bonds will require levies to be laid in excess of those permitted by the enabling act; and it is alleged that the debt service on the $64,000.00 of additional bonds "can be met and paid out of the direct levies on all property within the said municipality allocated to the current governmental expenses of said town, and within the maximum taxes and levies permitted by article X of the Constitution of West Virginia, as amended in 1932, supplemented, if necessary, by other current revenues of said town."

In our opinion, the averments of the answer do not serve to traverse the allegations of the bill of complaint because the denial of the answer must be read as a whole, and the statement that the limitations imposed by the enabling act will not have to be exceeded in order to furnish debt service for the bonds sought to be issued, must be read in conjunction with the statement that such debt service can be met by direct taxation, supplemented, if need be, by other revenues of the town, making it ap-

pear that the purpose is to devote revenue other than that derived from a direct tax, to the debt service upon the bonds. This cannot be done. Constitution of West Virginia, Article X, section 8; *Warden* v. *Grafton,* 115 W. Va. 438, 176 S. E. 706. It therefore appears that the general denial contained in the answer of the averment of the bill that the limitations will have to be exceeded to meet this debt service is a conclusion that does not follow from the specific facts alleged upon which it is sought to be based. This constitutes no adequate denial of the averment of the bill (*Thompson* v. *Colvin,* 53 Ore. 488, 101 P. 201; *Coal Run Mining Co.* v. *Interstate, etc., Co.,* 198 Ky. 456, 248 S. W. 1024), and we therefore conclude that the trial court properly sustained the demurrers to the answer and overruled the demurrer to the bill of complaint and to the intervening petition.

The questions certified are answered in accordance herewith.

*Affirmed.*