No. 46,221

WILMER BAKER, JR., ROY O. SPILLMAN, LESTER ROSS, ARTHUR WISBY, CHARLES FERGUSON, PAUL McGREW, EARL SELF, WILLARD SMITH, LEVERT J. ROSS, FRANCIS J. WEBER, CARL McCOLLAM and ROBERT THYER, *Appellants*, v. UNIFIED SCHOOL DISTRICT No. 346, County of Linn, State of Kansas, a municipal corporation, and H. MAURICE BROWN, ALLEN BROYLES, ALBERT IRWIN, ELLWOOD STAMBAUGH, BERT GORMAN, PETER HIGGINS and WILLIAM WOLFINGER, as board members of said Unified School District, and ELTHEDA KENNEDY, as clerk of said board, *Appellees*.

(480 P. 2d 409)

Opinion filed February 8, 1971.

*Orville J. Cole*, of Garnett, argued the cause and was on the brief for the appellants.

*Leighton A. Fossey*, of Mound City, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

FROMME, J.: The plaintiffs-appellants are residents and taxpayers of Unified School District No. 346, Linn county. They filed a

petition seeking to enjoin the school district officers from issuing bonds and constructing a school building.

The bonds were authorized by a special bond election in the district. The validity of that election was upheld by this court in *West v. Unified School District,* 204 Kan. 29, 460 P. 2d 103.

The school district and its officers (appellees) filed a motion to dismiss the petition to enjoin issuance of the bonds for the reason it failed to state facts sufficient to constitute a claim against the defendants. The trial court sustained the motion and the resident taxpayers have appealed.

The appellees in their brief question the authority of the taxpayers to prosecute this action. (See *Bobbett v. State, ex rel., Dresher,* 10 Kan. 9 and *Gormley v. School Board,* 110 Kan. 600, 204 Pac. 741.) However, the motion and the order dismissing the claim were based upon a failure to state facts sufficient to constitute a claim. Therefore we will proceed with the merits of the motion.

Omitting the paragraphs of the petition which identify the parties and pray for the relief sought, the petition reads:

"3. That said board proposes to issue bonds as the result of an election held in said district on June 14, 1968, and to use the proceeds obtained from the issuance of such bonds to construct a school building within said district; that prior to the election held in said district on June 14, 1968, the defendant board did widely advertise and circulate among the resident electors of said district a brochure, a copy of which is hereto attached and made a part hereof, wherein a particular building was pictured and described and that such information was widely contained in newspapers circulated within said district; that such information was relied upon by these plaintiffs and other resident electors in determining the way they would vote in such election; that these plaintiffs are informed and believe that said defendant board now proposes to construct a building with funds received from the sale of such bonds, which building is of an entirely different type of construction, size and of less durable and functional construction and is a complete departure from the building advertised at the time of the bond election.

"4. That at the time of said bond election, interest rates were considerably lower than now and were regulated by statute to a maximum of five and one-half (5½%) per cent per annum; that these plaintiffs and others similarly situated were informed by defendants at the time of the election as to the amount of probable interest on said bonds; that now interest rates are much higher and the statutory ceiling has been raised, none of which was anticipated or considered at the time of election.

"5. That said board is without authority to issue said bonds wherein the proceeds derived will be used to construct a building radically different from that which the voters considered at the time of the election, or upon which the interest rate is considerably greater, and that if said board proceeds to sell the bonds and enter into contracts for the construction of such building,

these plaintiffs and others similarly situated will be irreparably damaged and have no adequate remedy at law."

The appellants' claim for relief appears to be based upon two areas of concern. First, they are informed and believe the appellees now propose to construct a school building which is different in construction and size from the building represented in a brochure touting the election. Second, they object to the issuance of the bonds because the maximum statutory rate of interest is now more than when the election was held.

The legislature conferred power upon the school district board in general terms to select a site, acquire, construct, equip and furnish a school building whenever the board determined it to be necessary, (K. S. A. 72-6761). The required special bond election was held and the bonds were authorized.

It should be noted that until the bonds are sold the board has no funds to pay architects for plans and specifications. The details of the construction cannot be finalized until plans and specifications are obtained. The brochure used to promote the bond election in the present case is general in nature. It designates a site for the proposed school building, the general type of materials (concrete, masonry and steel) and the arrangement of classrooms.

Discretion and responsibility for construction of the school building are vested by the legislature in the school board. Discretion and responsibility for construction of the building are not vested in the appellants and not in this court. (See *Warner v. City of Independence*, 121 Kan. 551, 558, 247 Pac. 871.)

In *Warner* a trial court had ruled it had no jurisdiction to hear and determine the kind or quality of street paving, and this court on appeal said:

"We note what plaintiffs have to say about defendants' plans and specifications for the improvement. It will be a pity, indeed, if plaintiffs' prophecy comes true that the specifications are so defective that the street and road will have 'to be repaved within five years,' but discretion and responsibility on such matters must be vested somewhere. Under this statute they are vested in the city and county governing bodies, not in these plaintiffs, and not in the courts. The courts cannot interfere with the exercise of that discretion and responsibility where, as here, no substantial showing of fraud is disclosed by the record." (p. 558.)

In *State, ex rel., v. Younkin*, 108 Kan. 634, 196 Pac. 620, the acts of public officials in the construction of another road were questioned. It was said:

". . . When the legislature confers power in general terms upon an official body, without prescribing the details for the exercise of that power, the courts will not be officious to interfere with the official body's discretionary methods of performing the public duty intended by the legislature in granting such powers." (p. 639.)

In *Kansas Power Co. v. City of Washington*, 145 Kan. 962, 67 P. 2d 1095, it was held that minority electors and taxpayers cannot enjoin the necessary and normal result of a bond election by contending that the amount of bonds authorized is insufficient for the proposed purpose.

In *Lewis v. City of South Hutchinson*, 162 Kan. 104, 174 P. 2d 51, taxpayers sought to enjoin the city officials from exercising their judgment in regard to construction of a waterworks system. This court after considering the speculative prediction of the taxpayers, which was to the effect that plans and specifications about to be adopted were impractical and hazardous, dismissed the petition and said the petition did not present an issue which the court had jurisdiction to decide in the absence of bad faith or fraud.

In *Williams v. Holt*, 180 Kan. 308, 303 P. 2d 208, an action was filed to enjoin the issuance of rural high school bonds because portions of the original territory of the district had been detached from the district after the election and before issuance of the bonds. An injunction was denied and the rule of non-interference with administrative discretion was again applied by the court. Another exception was recognized but not applied. When the purpose for which the bonds were voted has ceased to be necessary, or has been abandoned, or the conditions have so changed to make issuance inequitable the court may then enjoin issuance of the bonds.

There is no allegation in the present petition of bad faith and no claim of arbitrary, capricious or unreasonable conduct by the board. No facts are alleged in the petition from which any of these may be inferred. No illegal acts are charged. The purpose for which the bonds were voted still exists, has not been abandoned and there is no change of conditions alleged which might render the issuance of the bonds inequitable. In the absence of such allegations the petition fails to state sufficient facts to constitute a justiciable claim. Discretionary acts of administrative officials are not subject to control by the courts in the absence of bad faith or unreasonable conduct amounting to fraud. When the issuance of bonds by a municipality has been authorized by a valid election

the issuance of the bonds will not be enjoined by the courts unless it clearly appears the purpose for which the bonds were voted has ceased to be necessary, or has been abandoned, or that conditions have so changed it would be inequitable to allow issuance of the bonds.

The petition does allege that the maximum statutory rate of interest on the bonds was raised by the legislature after the election and before issuance of the bonds. K. S. A. 1969 Supp. 10-103, which controlled at the time of the election, provided for interest at a rate not to exceed 5½% per annum. K. S. A. 1970 Supp. 10-1009 (a), effective March 21, 1970, provides for interest on the bonds at a rate not to exceed 7% per annum.

Appellants argue that the obligation of the electors is fixed by the applicable laws of the state when the election is held and the vote is cast. They urge this court to declare that K. S. A. 1970 Supp. 10-1009 applies only to bonds issued as a result of elections held after March 21, 1970, the effective date of the act. The statute reads:

"(a) No bonds constituting a general obligation of and backed by the full faith and credit of any municipal or taxing subdivision of the state of Kansas and issued under any act of which this act [See Chap. 64 of the Laws of 1970] is amendatory shall bear interest at a rate exceeding seven percent (7%) per annum.

. . . . . . . . . . . .

"(c) The maximum rates of interest specified herein shall be applicable to obligations issued after the effective date of this act pursuant to proceedings initiated either before or after the effective date of this act."

The plain wording of the statute makes the increased maximum rate of interest *applicable to bonds issued after the effective date of* the act regardless of when the bond election proceedings are held.

This bond election was held pursuant to notice required by K. S. A. 1967 Supp. 72-67,114 (f). The election notice should advise the electorate of the nine items listed in the statute. The rate of interest anticipated is not required by this statute to be stated in the notice. It was not mentioned in the present election notice. (See *West v. Unified School District,* supra, p. 31.)

The rate of interest cannot be accurately determined when the election is held. The purchase price of bonds under K. S. A. 1969 Supp. 10-106 is required to be not less than par and accrued interest. The bond market, current when the bonds are sold, will generally control the interest rate or rates. In Kansas the bidders compete for the purchase of the bonds by specifying the lowest rate or rates

of interest to be paid on the bonds. (In the cases relied on by appellants from other states this is not true by reason of statutory differences.)

The statutory limitation on the amount of bonded indebtedness a municipality may legally incur in Kansas is determined as of the date the bonds are issued and not the date of authorization. (*Jaeger v. City of Hillsboro*, 164 Kan. 533, Syl. ¶ 6, 190 P. 2d 420.)

Municipal bonds are not issued until they are sent out, delivered or put into circulation. (*Steinbruck v. Milford Township*, 100 Kan. 93, 163 Pac. 647; *State, ex rel., v. Woodruff*, 164 Kan. 339, 343, 189 P. 2d 899.)

In *Gray v. Joint Rural High School District No. 9*, 178 Kan. 387, 286 P. 2d 147, it was said:

". . . [I]t is not debatable but that whether the elections were properly held depends on the facts obtaining as of the date of the elections." (p. 393.)

Later in the opinion it is pointed out a valid election authorizing the issuance of bonds is not rendered invalid by a statute limiting the amount of statutory indebtedness of the district. In such case the board is authorized to issue and sell only that portion of the bonds below the limitation then in effect.

It would appear that statutory limitations on rates of interest fall within a similar sphere of municipal action having to do with issuance of the bonds.

We hold the limitation on the maximum rate of interest to be paid on municipal bonds as specified in K. S. A. 1970 Supp. 10-1009 is applicable to all bonds issued after the effective date of the statute even though said bonds may have been authorized by an election held prior thereto. The law in effect at the time of the issuance becomes a part of the contract (64 C. J. S. Municipal Corporations § 1947) and in such case the statute providing the maximum rate of interest is given only prospective application when applied to the bonds being issued.

Accordingly, the petition failed to state sufficient facts to constitute a claim and the judgment is affirmed.