**Emil V. DELGIORNO et al., Appellants**
**(Plaintiffs below),**

**v.**

**John B. HUISMAN, as County Clerk of Laramie County, Wyoming, Appellant**
**(Defendant below),**

**State of Wyoming, Appellee**
**(Intervenor below).**

**No. 4121.**

Supreme Court of Wyoming.

June 30, 1972.

Dean W. Borthwick, Cheyenne, for appellants, Emil V. Delgiorno, Oscar Sosa, Jr., and Martin Biancalana.

Thomas J. Carroll, Cheyenne, for appellant John B. Huisman.

Clarence A. Brimmer, Atty. Gen. and Jerome F. Statkus, Special Asst. Atty. Gen., Cheyenne, for State.

Before McINTYRE, C. J., and PARKER, McEWAN, and GUTHRIE, JJ.

Mr. Justice McEWAN delivered the opinion of the court.

The plaintiffs, bona fide residents of the State, and qualified to vote except for the duration of their residence, sought a declaratory judgment, alleging the unconstitutionality of Article 6, § 2, of the Wyoming Constitution, and certain statutes,[1] basing the claim upon violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution.[2]

---

1. Section 22–118.3(j), W.S.1957 (1971 Additional Supp.), § 22–118.27, W.S.1957 (1971 Additional Supp.), § 22–157, W.S. 1957, (1971 Cum.Supp.), and § 22–158, W.S.1957 (1971 Additional Supp.).

2. The State of Wyoming on petition was granted the right to intervene.

It was stipulated that all plaintiffs were bona fide residents of the State of Wyoming. Plaintiff Delgiorno had been a resident of Laramie County for about five months, plaintiff Sosa for 43 days, and plaintiff Biancalana for 13 days. The county clerk had refused to register any of the plaintiffs on the ground that none of them had been residents of the State for one year, and that at least one of them did not meet the 60-day county residency requirement.

The district court held the mentioned constitutional provision and statutes to be unconstitutional insofar as they required residence of one year in Wyoming but valid as to the 60 days residence in the county and the ten days in the precinct, and the matter is before us on appeals. Plaintiffs argue that if any durational residence period is justified it can only be 15 days. The county clerk contends that the challenged portions are not violative of the equal protection clause, and the State asserts that all durational residency requirements of less than three months meet the compelling interest test.

We recognize, of course, as did the district court and counsel that interpretation and disposition must be within the guidelines established by the United States Supreme Court, the most recent and direct pronouncement on the subject being Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274.

Article 6, § 2, Wyo.Const., provides:

"Every citizen of the United States of the age of twenty-one years and upwards, who has resided in the state or territory one year and in the county wherein such residence is located sixty days next preceding any election, shall be entitled to vote at such election, except as herein otherwise provided."

The minimum age has been lowered to 18 by the Twenty-sixth Amendment to the United States Constitution.

Section 22–118.96, W.S.1957 (1971 Cum. Supp.), provides:

"Every person who is a qualified elector shall, providing he is registered according to law be entitled to vote at any primary, general, or special election * * *."

Section 22–118.3(j) defines a qualified elector in the State of Wyoming as follows:

"The term 'qualified elector' includes every male and female citizen of the United States who will be at least eighteen (18) years of age on the day of a general election at which he may offer to vote, and who on or before such election day shall have resided in the State of Wyoming for at least one (1) year, and in the county wherein he may offer to vote for at least sixty (60) days, and in the precinct wherein he may offer to vote for at least ten (10) days; * * *."

Section 22–157 has to do with the method and manner of registering, and §§ 22–118.27 and 22–158 with the oath to be executed by an applicant for registration in primary and general elections. An unregistered voter may register at the primary election by taking an oath on election day, which oath contains an affirmation that the registrant will have been a resident of the State of Wyoming for at least one year last past, a resident of the county for at least 60 days, and the precinct for 10 days. The oath of an applicant for registration in the general election contains an affirmation that the applicant will have been an actual bona fide resident of the State for one year, of the county 60 days, and of the precinct 10 days preceding the day of the next election.

The briefs and arguments of the parties and the memorandum opinion of the trial court indicate there is some misunderstanding as to the difference between the durational residency requirements and the period of time prior to an election when the

registration books are closed. Perhaps a review of these requirements is in order.

The State of Wyoming, by constitution and statutes, requires a voter to be a resident within the State for one year, the county for 60 days, and, at least as to the general election, an unregistered voter must register not later than 15 days prior to the general election. According to the *Dunn* case, the State of Tennessee required that a person be a resident of the State for 12 months, the county for three months, and its registration books were closed 30 days before both primary and general elections. Thus, to compare the 30-day requirement in Tennessee with the 60-day requirement in Wyoming is to compare Quarter horses and Rhode Island Red chickens—they are just not the same. The 30-day provision in Tennessee is comparable to the 15-day provision in Wyoming.[3]

The trial court seemed to recognize this distinction in one portion of its memorandum opinion, but then seemed to ignore the difference in its later discussions. The trial court quoted from the *Dunn* case, and then made certain comments:

" * * * The exact language used by the Court was 'It is sufficient to note here that 30 days appears to be an ample period of time for the State to complete whatever administrative tasks are necessary to prevent fraud—and a year, or three months, too much.' [405 U.S. 330, 92 S.Ct. 995] 31 L.Ed.2d at page 288. This leaves in limbo the period between 30 and 90 days and if a state can find justification for a duration between those two periods, the U. S. Supreme Court may acknowledge its validity. It must be noted, however, that this language is only with respect to the administrative details which must be performed by those persons charged with the handling of elections. The Court would be remiss if it did not notice that

the Supreme Court recognized the judgment of the Tennessee Legislature which required registration thirty days before an election as an adequate period for election officials to do whatever may be necessary to prepare for the election. In Wyoming the deadline for registration is fifteen days before the election. Section 22–156, WS 1957. Absentee voters, however, must request the necessary registration forms at least thirty days prior to the date of election. Section 22–139.32, WS 1957, as amended.

"The Supreme Court decision is written in such positive form that it meets most arguments that can be advanced to justify a period in excess of thirty days. There is only a narrow strip left in which the State of Wyoming can maneuver to establish a valid distinction between the situation in Tennessee and the situation in Wyoming.

"The State and the County advance the reasonable arguments that because of the small staffs of county clerks' offices, more than thirty days is required to take care of the necessary administrative details in connection with the processing of a voter to enable the county to perform its function and the voter to perform his. Thirty days just does not enable the county clerk and his staff to check out the possibility of voter fraud and the registration affidavit, because of the many other details that must be taken care of such as, in addition to registering voters, preparing and distributing voter election information, voter registration lists, preparing and printing ballots, preparing poll books, furnishing election supplies to election precincts, publication of election proclamations and lists of nominees for political office, arranging the appointment of election clerks and judges, conducting training schools for election boards, arranging for counting boards, supplying and equipping poll-

3. Section 22–156, W.S.1957.

ing booths and instruction to voters, processing absentee voter applications, preparation of voting machines for election purposes, delivery of meals for election boards on election day, preparation for security of the ballot and preparation for the reporting of election returns, etc. It is noted that because of the shortened durational residency requirement, a greater investigation will be necessary, because of locally unavailable information."

While the trial court stated that more than 30 days is required to take care of the necessary administrative details, the details which it then set forth would still have to be performed within 15 days of the general election. Requiring a person to be a resident of the county 60 days prior to the general election would not increase the period of time in which the county clerk had to perform his duties, which apparently include the checking of possibility of voter fraud. As the court said in *Dunn*, supra, 92 S.Ct. at 1005:

" * * * As long as the State permits registration up to 30 days before an election, a lengthy durational residence requirement does not increase the amount of time the State has in which to carry out an investigation into the sworn claim by the would-be voter that he is in fact a resident."

If the 15 days, as presently required under our statute, is thought not to be sufficient time to perform these administrative tasks, it is up to the legislature to enlarge the period, bearing in mind the guidelines as established in *Dunn*, supra, 92 S.Ct. at 1006, wherein it was said:

" * * * It is sufficient to note here that 30 days appears to be an ample peri-

od of time for the State to complete whatever administrative tasks are necessary to prevent fraud—and a year, or three months, too much. * * * "

It should perhaps also be noted here that under the laws of the State of Wyoming the only time prior registration is required is in the general election,[4] and then only for those who did not vote in the last general election or in the preceding primary election. No prior registration is required to vote in primary elections as registration is permitted for an unregistered voter at the time of voting.[5] It also appears that in school[6] and some municipal[7] elections an unregistered voter, who is otherwise qualified to vote, is entitled to vote solely in those elections by executing an affidavit at the time of voting even though some phase of those elections may be held at the same time and in conjunction with general elections. In Wyoming in all except general elections no registration prior to election day is required. In those cases then it would seem impossible for the county clerk to make any significant checks as to whether or not a person attempting to register and vote is actually a bona fide resident, or that he or she has been a resident of the State, county, or precinct, or city or school district for any given period of time. There is absolutely no relationship between the 15-day period for closing of registration books and the one year and 60 days durational residence requirements.

Also, what was said in *Dunn,* supra, 92 S.Ct. at 1005, is true in the case at hand as to Wyoming:

" * * * There is no indication in the record that Tennessee routinely goes behind the would-be voter's oath to determine his qualifications. * * * "

---

4. Section 22–155, W.S.1957 (1971 Cum. Supp.).

5. Section 22–118.27, W.S.1957 (1971 Additional Supp.).

6. Section 21.1–72, W.S.1957 (1971 Cum. Supp.).

7. Section 22–118.49, W.S.1957 (1971 Cum. Supp.).

No testimony was taken in this case, the matter having been submitted to the district court on a stipulation of facts. The State undertook to show the compelling reasons justifying durational residence requirements, purporting to satisfy that obligation by relying upon the stipulation of facts which furnished the basis for the trial court's findings. The stipulation and findings resulting therefrom, as hereinabove set forth, fall short in disclosure of compelling reasons for imposing durational residence requirements. As also said in *Dunn*, supra, 92 S.Ct. at 999: " * * * the State must show a substantial and compelling reason for imposing durational residence requirements." We want to make it clear that the district court would have been warranted in holding 60 days residence in the county constitutional if there had been a compelling reason shown. Similarly, the legislature is still free to establish durational residence requirements for any period for which their investigation showed there was a compelling reason.

Although, as we have pointed out, there is a difference between durational residence requirements and the period of time for closing the registration books, the closing of registration in effect imposes a type of durational residence requirement. One of the requirements for registration, even under the Federal Voting Rights Act of 1970,[8] is that the registrant be a resident of the state in which he seeks to vote at the time he registers. Thus, if the registration books are closed 30 days before an election, and the Supreme Court in the *Dunn* case and Congress in the Federal Voting Rights Act of 1970 have said that 30 days is permissible and only residents as of that day may register, in effect then, any person who votes has been a resident for 30 days before election day.

A requirement that a person be a resident of the county 30 days before an election will permit all those persons to vote who would be permitted to vote under the holding in the *Dunn* case as well as those who would be permitted to vote in presidential elections. As we point out in footnote 11, any person may move within the State, and, if not yet qualified to vote in the precinct where he has moved, may vote in his old precinct.

Also, it should be noted that we have a more liberal provision than that required under the Federal Voting Rights Act of 1970,[9] which permits a person who began residence in a new state after the 30th day preceding the presidential elections to vote in the state in which he resided immediately prior to his removal, in that Wyoming statutes permit a person who has moved to another state, but is ineligible to vote in the other state because of insufficient residence, to vote in the general election in Wyoming, in the county and precinct in which he was registered at the time he moved from Wyoming.[10]

Since residential requirements have been found to be unconstitutional unless compelling reasons for opposing them have been shown, and there was no adequate showing in this case, there remains for this court to establish guidelines for the direction of election officials and citizens pending action by the legislature.

---

8. 42 U.S.C.A. § 1973aa–1(d) (1971 Supp.), provides that each state shall provide by law for the registration or other means of qualification of all duly qualified *residents* of such state.

By way of implementation of those provisions of the Federal Voting Rights Act of 1970, Wyoming law (§ 22–139.15 et seq., W.S.1957 (1971 Cum.Supp.), provides that a Wyoming *resident*, who is qualified to vote except for failure to reside in Wyoming for one year may vote for presidential and vice presidential electors.

9. 42 U.S.C.A. § 1973aa–1(e) (1971 Supp.).

10. Section 22–118.3(k)6, W.S.1957 (1971 Cum.Supp.).

■ We hold that in light of our present constitutional and statutory provisions election officials may require as a precondition for registering that a voter will have been a resident of the county for 30 days immediately preceding the primary or general election.

■ Requirements in our State Constitution and State laws for a durational residence of one year in the State, and residence in excess of 30 days in the county as a precondition for voting are, under · the state of the record before us, repugnant to the Fourteenth Amendment of the United States Constitution, as construed by the United States Supreme Court in Dunn v. Blumstein, supra.

■ A requirement that a voter be a resident of the precinct wherein he may offer to vote for at least 10 days [11] is constitutional and shall stand.

The judgment of the trial court is affirmed as modified.

McINTYRE, Chief Justice (concurring).

My opinion was first written as a proposed opinion for the court. It failed to obtain majority approval. We now seem to be in substantial agreement, however. Therefore, even though there may be some duplications, I am putting my original opinion in the form of a special concurrence with the majority.

The plaintiffs brought an action in district court for a declaratory judgment. They allege § 2, Art. 6, Wyoming Constitution, and §§ 22–118.3(j) and 22–157, W.S. 1957, 1971 Cum.Supp. and Chapter 4, § 10, Wyoming S. L., 1971 Special Session, are unconstitutional insofar as they provide for any durational requirements as a precondition for voter registration. Their claim is based on the equal protection clause of the Fourteenth Amendment to the United States Constitution.

The trial court held § 2, Art. 6, Wyoming Constitution, and §§ 22–118.3(j) and 22–157, and ch. 4, § 10, of our statutory laws unconstitutional, insofar as they require residence for one year in Wyoming as a qualification for voting. Such requirement was found to be in conflict with the equal protection clause of the federal constitution.

Regarding the requirements of residence in the county for 60 days and in the precinct for 10 days, the trial court considered these periods necessary for a compelling state interest and held such requirements constitutional and valid. By appropriate appeal, the decision of the district court has been brought to us for review.

Section 2, Art. 6, Wyoming Constitution provides:

"Every citizen of the United States of the age of twenty-one years and up-

---

11. It would seem that the 10-day residency requirement in the precinct is more in the nature of a requirement to aid election officials in the performance of their administrative tasks than a durational residence requirement. Under Wyoming law the county clerk must furnish 10 days prior to the day of election lists of registered voters to: (1) each political party's county chairman (§ 22–156.1, W.S.1957 (1971 Cum.Supp.) ; (2) the board of county commissioners who shall forthwith cause the same to be publicly posted at each polling precinct in the county; (3) the clerk of each incorpo-

rated city and town within the county; and (4) the judges of each polling precinct in the county (§ 22–166, W.S.1957). Also, the 10-day precinct residency requirement does not preclude a registered qualified elector from voting even if he or she has moved to another precinct within the State during that 10-day period. As § 22–118.96 provides: " * * * A person who is a qualified elector of this state and registered in any precinct in this state shall not be disqualified to vote in that precinct, although he has moved into some other precinct too late to gain voting residence."

wards, who has resided in the state or territory one year and in the county wherein such residence is located sixty days next preceding any election, shall be entitled to vote at such election, except as herein otherwise provided."

The minimum age has been lowered to 18 by the 26th Amendment to the United States Constitution.

Section 22–118.3(j), as amended by Laws 1971, Sp.Sess., Ch. 4, § 7, defines a qualified elector as follows:

"The term 'qualified elector' includes every male and female citizen of the United States who will be at least eighteen (18) years of age on the day of a general election at which he may offer to vote, and who on or before such election day shall have resided in the State of Wyoming for at least one (1) year, and in the county wherein he may offer to vote for at least sixty (60) days, and in the precinct wherein he may offer to vote for at least ten (10) days * * *."

Section 22–157 and Ch. 4, § 10, have to do with the method and manner of voting and the oath to be executed by an applicant for registration.

All of the parties here involved seem to agree the recent decision of the United States Supreme Court in Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed. 2d 274, is controlling and that our determination must necessarily be in keeping with its pronouncements.

In his memorandum opinion, the trial judge in the instant case has said the decision in *Dunn* is written in such positive form that it meets most arguments which can be advanced to justify a durational residence requirement in excess of 30 days. He has pointed out there is only a narrow strip left in which the State of Wyoming can maneuver to establish a valid distinction between the situation in Tennessee and the situation in Wyoming.

No evidence has been offered to show any substantial difference in the situation in Wyoming and Tennessee. Even if we were to take judicial notice of the density of population, communication difficulties and other conditions in Wyoming, we would have trouble evaluating differences and similarities with Tennessee where our judicial knowledge does not extend.

In any event, the United States Supreme Court has clearly held that 30 days is an adequate duration of residence to qualify as an elector in the State of Tennessee. No matter how much we may disagree with the holding, and even though we give the trial judge "E" for effort, it is a losing battle to try to reason that there is a compelling state interest in Wyoming which justifies a longer durational residence requirement than the 30 days which was said to be adequate for Tennessee.

A mention of some of the pronouncements made in the *Dunn* opinion will serve to illustrate why I say it is futile to try to claim a compelling state interest in Wyoming which would justify making our state an exception to the general rule.

1. Durational residence requirements, the court has stated, completely bar from voting all residents not meeting the fixed durational standards. The court held laws which deny some citizens the right to vote deprive them of a fundamental political right; and a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction.

2. Although the test to be applied is whether the exclusions are necessary to promote a compelling state interest, Tennessee's laws were condemned because they classified bona fide residents on the basis of recent travel to the state. Such classification was expressly disapproved because persons who have gone from one jurisdiction to another during the qualifying period are penalized.

3. This classification was also rejected because it impinges on another fundamental personal right—the right to travel. Freedom to travel throughout the United States, including the right to enter and abide in any state in the Union, was declared to be a basic right under the Constitution.

4. In sum, the *Dunn* opinion clearly states durational residence laws are unconstitutional unless the state can demonstrate such laws are *"necessary* to promote a *compelling* governmental interest." 5. The opinion recognizes and declares that states have the right and power to require that voters be *bona fide* residents of the relevant political subdivisions. In the exercise of this right, it is declared a state has a legitimate and compelling interest in preventing election fraud by nonresidents who temporarily invade the state or county, falsely swear that they are residents, and by voting allow a candidate to win by fraud.

I construe the pronouncements in the *Dunn* case to mean the most a state can require with respect to residency for voting is that a voter must be a bona fide resident of the place where he offers to vote. However, to complete whatever administrative tasks are needed to prevent fraud and insure purity of the election box, a state may require prior registration. In this regard, the United States Supreme Court has clearly taken the position that a period of 30 days is ample to complete necessary administrative tasks.

The Congress of the United States has passed the Federal Voting Rights Act of 1970. Section 1973aa–1(b), Title 42, U.S. C.A., 1972 Cumulative Annual Pocket Part, states unequivocally that Congress declares, in order to secure and protect the rights of citizens under the Constitution, to enable citizens to better obtain the enjoyment of such rights, and to enforce the guarantees of the Fourteenth Amendment, it is necessary to "completely abolish the durational residency requirement" as a precondition to voting for President and Vice President.

Subsection (d) of the act specifies that each state shall provide for the registration or qualification of duly qualified residents who apply, "not later than thirty days" immediately prior to any presidential election.

Thus, in the *Dunn* decision by the United States Supreme Court and in the enactment of Congress pertaining to elections for President and Vice President, we have the same philosophy adhered to.

No testimony was taken in the case we are dealing with. The matter was submitted to the district court on a stipulation of facts. There are then two reasons why we should hold, as far as this case is concerned, that no compelling state interest has been shown for a 60-day durational residency requirement in the county where a voter offers to vote.

*First,* there is no evidence on which a finding of such a compelling interest can be predicated; and even if we take judicial notice of conditions in Wyoming, there still are insufficient facts and conditions to make Wyoming an exception to the general rule.

*Second,* while both the *Dunn* opinion and the Federal Voting Rights Act of 1970 recognize the reasonableness of a period of 30 days within which to close registrations and complete such administrative tasks as are needed to prevent fraud and insure purity of the ballot box, the Wyoming legislature has seen fit to allow registrations in Wyoming at any time prior to 15 days before any election.[1] If that is not sufficient time, the legislature and not the courts will have to change it—up to but not exceeding 30 days before any election.

1. See § 22–156, W.S.1957.

My conclusion is that all requirements in our state constitution and state laws for a durational residence of one year in the state and all requirements for residence of 60 days in the county, as a precondition for voting, are repugnant to the Fourteenth Amendment, United States Constitution, as construed by the United States Supreme Court in Dunn v. Blumstein.

All requirements for a voter to be a bona fide resident of Wyoming and the place where he offers to vote, including residence in his precinct for ten days, are constitutional and should stand.

In view of what I have said, it is apparent I am in agreement with my colleagues in holding that the judgment of the trial court should be modified by changing the 60-day residence requirement to 30 days.