Virginia **TORRES** et al., **Appellants** (Plaintiffs below),

v.

**LARAMIE COUNTY SCHOOL DISTRICT NO. I, Appellee** (Defendant below).

No. 4187.

Supreme Court of Wyoming.

Feb. 26, 1973.

Rehearing Denied March 30, 1973.

Louis A. Mankus, Cheyenne, for appellants.

A. G. McClintock of McClintock, Mai, Urbigkit & Moriarity, James O. Wilson of Loomis, Lazear, Wilson & Pickett, Cheyenne, for appellee.

Before PARKER, C. J., and McEWAN, GUTHRIE and McINTYRE, JJ.

Justice McINTYRE delivered the opinion of the court.

Suit was brought by five electors of Laramie County School District No. 1 contesting a bond election in which the question presented to the voters was whether the trustees of the district should be authorized to issue general obligation bonds of the district in an amount not to exceed $9,500,000 for school buildings. The bond issue carried by a vote of 5,628 for and 4,743 against. A majority of 885 voters favored authorization for the bonds.

The district court held against the contestants and in favor of the school district. The contestants have appealed. Six grounds for reversal are urged and we will confine ourselves to a consideration of the assignments relied upon. Such assignments are these:

1. The district required only 30 days instead of 60 days as a residency qualification for voters.

2. All absentee ballots should be voided and the election should be declared invalid.

3. An improper affidavit of voter was used at the election.

4. The affidavit of voter was not properly sworn to and received and the election should be declared a nullity for this reason.

5. The authorization for bonds is void because a debt in excess of ten percent of the assessed property valuation in the district has been created.

6. Appellants were not given a fair trial and a new trial should be granted.

1. *30-Day Residency.* Appellants contend § 22–139.5, W.S.1957, 1971 Cum.Supp., is controlling with respect to residency qualifications in bond elections; that such

section requires a voter to be a resident of the county for 60 days; that there is no statutory authority allowing a person to vote who has been a resident for only 30 days; and until the legislature changes the durational residency requirement, the requirement for a voter to have resided in the county 60 days remains the law in Wyoming.

Art. 1, § 37, Wyoming Constitution, declares the State of Wyoming is an inseparable part of the federal union, and the constitution of the United States is the supreme law of the land. This necessarily means the constitution of the United States as interpreted by the United States Supreme Court is controlling law in Wyoming. Thus, when the United States Supreme Court, in Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274, declared durational residence laws are unconstitutional unless a state can demonstrate that such laws are necessary to promote compelling governmental interest, it not being sufficient for a state to show that requirements further a very substantial state interest, that holding became binding upon Wyoming.

As far as this state is concerned, we held in Delgiorno v. Huisman, Wyo., 498 P.2d 1246, 1251, that requirements in our constitution and laws for a durational residence of one year in the State and residence in excess of 30 days in the county as a precondition for voting were, under the state of the record there before us, repugnant to the 14th amendment of the Constitution as construed by the Court in Dunn v. Blumstein, *supra,* and while indicating further that the legislature was free to establish durational residence requirements for any period for which their investigation showed there was a compelling reason, said that we were establishing guidelines for the direction of election officials and citizens pending action by the legislature, 498 P.2d at 1250.

In the record before us here there is no evidence of a compelling reason for the

imposition of the 60-day period and our pronouncements in *Delgiorno* must apply.

▪ 2. *Absentee Ballots.* Chapter 5 of the Wyoming Education Code deals with school elections in general and Article 2 of Chapter 5 pertains to absentee ballots. Appellants assert that two sections in Article 2, §§ 21.1–90 and 21.1–91, W.S.1957, 1971 Cum.Supp., provide there shall be no absentee voting in school bond elections. They are incorrect in such assertion. Actually, the sections referred to prescribe the procedure for obtaining an absentee ballot in any school election "except a bond election."

The Education Code (including §§ 21.1–90 and 21.1–91) was adopted by the legislature in 1969. Two years later, in 1971, the legislature adopted a special and separate chapter pertaining to bond elections. This chapter is now §§ 22–139.1 to 22–139.9, W.S.1957, 1971 Cum.Supp. It is a part of the election laws of the state. Section 22–139.-5, a part of this special chapter, expressly provides: "Absentee voting is permitted in bond elections provided for in this act [§§ 22–139.1 to 22–139.9]." Thus, if the provision in § 22–139.5 (which permits absentee voting in bond elections) controls, then the claim of appellants that absentee ballots should be voided would be without merit.

In further argument under assignment 2, appellants direct our attention to §§ 22–118.121 to 22–118.143, W.S.1957, 1971 Cum.Supp. These sections are a part of general election laws which were passed in 1961. They have to do with absent voters and persons in military service. Section 22–118.122 specifies that the article involved shall pertain to and be limited to any qualified elector (1) who has complied with laws of the state concerning registration and expects to be absent on election day; or (2) who has complied with laws of the state concerning registration and expects to be physically unable to appear at the polls on election day.

▪ Although appellants argue § 22–118.122 requires a voter to be registered before he can vote absentee, the section does not so provide. If prior registration is not required before voting in a particular election, then it cannot be said an unregistered voter has failed to comply with laws of the state concerning registration.

▪ The same logic applies to § 22–118.127. It specifies that a clerk of election shall not send ballots to absent voters unless and until they are registered "according to law." Of course, if the law requires no prior registration for a particular election, then the clerk could not refuse to send ballots to absent voters, along with the necessary registration affidavit which the voter would make at the time of voting.

▪ But, even if the provision in § 22–139.5, which states that absentee voting is permitted in bond elections, is thought of as conflicting with one or more of the sections which appellants say are inconsistent, § 22–139.5 would prevail. That section is a part of the chapter dealing specially and particularly with bond elections.

▪ The rule to be applied is that general legislation must yield to special legislation on the same subject whether provisions are found in the same statute or in different statutes. Higby v. State, Wyo., 485 P.2d 380, 382.[1]

Of course, if the statutes in question can be read in harmony and do not actually conflict, then there is no problem. In Bixby v. Cross, Wyo., 384 P.2d 710, 711–712, we held that to be the situation. We are inclined to believe it is the situation in the case at hand. At least appellants have failed to persuade us there are critical conflicts.

We have previously referred to Chapter 5 of the Wyoming Education Code which has to do with school elections. The first

---

1. See also Fugate v. Mayor and City Council of Town of Buffalo, Wyo., 348 P.2d 76, 83, 97 A.L.R.2d 243; Longacre v. State, Wyo., 448 P.2d 832, 833; and State v. Hansen, Wyo., 401 P.2d 954, 958.

section of that chapter (§ 21.1–72, W.S. 1957, 1971 Cum.Supp.), provides:

"No prior registration by voters shall be required for any election authorized or required to be conducted under this code."

■ The next section (21.1–73) states that the general election laws of the state shall govern school elections insofar as "they are applicable and not inconsistent with the provisions of this code." It will be seen from this that appellants cannot rely on general election laws which are not applicable, or which are inconsistent with provisions of the Education Code. This would mean the provision in § 21.1–72 (a part of the education code), to the effect that prior registration shall not be required, will prevail over any general election law which appellants might seek to rely on.

In any event, consideration being given to the order in which legislation has taken place, the special chapter having to do with bond elections (including the declaration in § 22–139.5 that absentee voting is permitted) supersedes all other statutes relied on by appellants. That because §§ 22–139.1 to 22–139.9 were passed in 1971. Also, § 21.-1–72, which states no prior registration shall be required, supersedes anything in conflict therewith in §§ 22–118.121 to 22–118.143. That because § 21.1–72 was passed in 1969 and §§ 22–118.121 to 22–118.143 were passed in 1961. Minor amendments not here relevant were made in 1971 to § 22–118.132.

3. *Affidavit Form.* Appellants claim the affidavit of voter form prescribed in § 21.1–83, W.S.1957, 1971 Cum.Supp., was used for the election which is contested. They contend bond elections are governed solely by §§ 22–139.1 to 22–139.10. As far as § 22–139.10 is concerned, that section did contain an affidavit of voter form. However, the section was repealed in the 1971 special session of the legislature. Ch. 4, § 20, Session Laws of Wyoming, 1971 Special Session.

In addition to the chapter dealing with bond elections [§§ 22–139.1 to 22–139.9], the Education Code authorizes special elections such as the one here involved, in § 21.1–104. It provides:

"(a) In addition to the regular annual election, the board of trustees of any school district within the state may call an election at any time for any purpose authorized by law. Any election other than the regular annual election shall be known as a special school district election.

"(b) Any proposition, measure, or question authorized by law may be submitted by the board of trustees to the voters at any regular annual election or at any special school district election."

■ Thus, in the absence of an affidavit of voter form being prescribed in the chapter on bond elections [§§ 22–139.1 to 22–139.9], it was proper and right for the affidavit of voter form prescribed in the Education Code [21.1–83] to be used. The form was amended as indicated in Chapter 4, § 5, Session Laws of Wyoming, 1971 Special Session. The amendment changed the voting age from 21 years to 18 years. Also, the election officials, as we have previously indicated, properly eliminated the residence requirement of one year in the state and changed the residence requirement in the county to 30 days instead of 60 days.

The only other affidavit of voter form to be considered is the one prescribed in § 22–158, W.S.1957, 1971 Cum.Supp. This form is for registration of voters and is a part of the general election laws.

We have previously made it clear that appellants cannot rely on general election laws which are inapplicable or which are inconsistent with provisions of the Education Code. Section 21.1–83 is a part of the Education Code and it contains the affidavit of voter form specifically applicable for the kind of election we are dealing with. Thus, appellants cannot rely on § 22–158.

4. *Were Affidavits Properly Sworn To?* The statement of this assignment would indicate appellants are claiming affidavits were not properly sworn to. That is not what is argued under the assignment, however. Instead, appellants complain merely because 1,896 voter affidavits were used. Their complaint seems to be a repetition of the argument that citizens should not have been permitted to vote without prior registration.

We have already pointed out that § 21.-1–72, W.S.1957, 1971 Cum.Supp., specifically provides that prior registration shall not be required in elections under the education code. Also, § 22–139.6, W.S.1957, 1971 Cum.Supp., specifies that a qualified elector who has complied with registration laws "in the event that prior registration is required" is entitled to vote.

In Johnson v. City of Cheyenne, Wyo., 504 P.2d 1081, 1082–1083, reh. den., we dealt with a contention that voters who were not registered were permitted to register on election day prior to voting. Of that contention we stated:

"No illegality in this procedure has been shown. In many of our elections, including the statewide primary elections, no prior registrations are required and a qualified elector may register at the polls on election day prior to voting as provided by statute."

As best we can tell from the record in this case, there were 24 affidavits which did not have the signature of an election judge or clerk. Appellants cite and rely on Fugate v. Mayor and City Council of Town of Buffalo, Wyo., 348 P.2d 76, 84, 97 A.L.R.2d 243, for the proposition that such affidavits would be void. We have no quarrel with the conclusion that the 24 affidavits which were lacking the signature of an election judge or clerk would be insufficient and void.

However, the business manager for the school district suggested in his testimony that such affidavits were probably not used; that the voters who signed these instruments may have been found to be already registered, making unnecessary the use of a new affidavit at election time. Section 21.1–83, as amended in the 1971 special session of the legislature, provides "In the event the name of a qualified elector does not appear on said poll list," then the elector shall take and subscribe before an election official the required oath.

If we assume, in the absence of proof to the contrary, that election officials properly performed their duties, we would have to assume the 24 questioned affidavits were affidavits not relied upon. Unfortunately, the record is unclear and no evidence was offered by either side to show conclusively whether the names of the 24 voters who signed the uncompleted affidavits already appeared on the poll list.

The essential difference in the case before us and the *Fugate* case is that the 23 votes involved in connection with insufficient affidavits in *Fugate* could make a difference in the result of the election. In the case now before us, even if we assume 24 votes were improperly cast, the result would not be changed. Section 22–139.4, W.S.1957, 1971 Cum.Supp., expressly states:

"No irregularity in any election on the creation of an indebtedness shall be invalidated unless it shall be determined that the result would have been changed."[2]

5. *Debt Limit.* Art. 16, § 5, Wyoming Constitution, provides:

"No school district shall in any manner create any indebtedness exceeding ten per cent (10%) on the assessed value of the taxable property therein for the purpose of acquiring land, erection, enlarging and equipping of school buildings."

The evidence in support of the contention that this constitutional debt limit is being exceeded shows the assessed valuation of property in Laramie County School

---

2. This principle was adhered to in Johnosn v. City of Cheyenne, Wyo., 504 P.2d 1081, 1083, reh. den.

District No. 1 was $92,944,540. As of the day of election the indebtedness of the district was $1,685,000. Thus, if a debt of $9,500,000 was created on election day, the ten percent debt limit would clearly be exceeded.

On behalf of the district it is argued that the presently existing debt of the district will be completely discharged before new bonds are issued pursuant to the authorization of the recent bond election. It is also asserted on behalf of the district that bonds will not be issued or any debt incurred which would make the total of the district's debt in excess of the ten percent limit.

It must be noted that the language in our constitutional provision concerning a debt limit is such that it prohibits the district from *creating* any debt in excess of the prescribed limit. It does not *per se* prohibit authorization for a maximum debt which could exceed the prescribed limit. In this instance the voters voted on the question of whether the trustees of the district should be authorized to issue general obligation bonds in an amount "not to exceed $9,500,000.00, or so much thereof as may be necessary," for school buildings.

■ Parties agree the question for our decision is whether, when a majority of the electors voted for the authorization concerned, the district thereby and at that time created a debt of $9,500,000 in addition to the already existing debt of the district. Counsel on both sides seem to recognize there is a conflict in the authorities on this question.

■ Giving due consideration to the precise language used in our constitution, and having carefully weighed the authorities pro and con, we accept and adopt the rule stated in 56 Am.Jur.2d, Municipal Corporations, § 618, p. 665, as the correct and applicable rule for this jurisdiction. Such rule is as follows:

"A debt arising from bonds is not incurred until the bonds are issued, and it is the financial condition of the municipality or political subdivision at the time of issue, rather than at the time of authorization, which determines whether the bonds exceed the debt limit." [3]

■ 6. *Fair Trial.* The claim that appellants were not afforded a fair trial is too general to answer. No specific trial errors are urged which could have prejudiced the plaintiffs and no authorities are cited. Moreover, other assignments of error which are being urged raise questions of law and not questions of fact. There appears to be no material dispute of facts. Hence, even if another trial were afforded, it could not affect or change our rulings on the questions of law presented in this appeal.

We find no reversible error or erroneous rulings of law in connection with any of the assignments of error which appellants have asked us to rule on.

Affirmed.

3. The following cases support the position we take, holding in general that an election authorizing an issue of bonds does not create a debt; that the debt is created when the bonds are offered and sold; and the amount of bonds which can be issued depends upon the amount of taxable property at the time the bonds are sold: Karsh v. City and County of Denver, Colo., 490 P.2d 936, 940; Trumbo v. Crestline-Lake Arrowhead Water Agency, 250 Cal.App.2d 320, 58 Cal. Rptr. 538, 544; Hammond v. Bingham, 83 Idaho 314, 362 P.2d 1078, 1082; Baker v. Unified School District No. 346, County of Linn, 206 Kan. 581, 480 P. 2d 409, 413; Smith v. Livingston County, 195 Ky. 382, 242 S.W. 612, 616–617; Morrison v. Board of Education of Ind. Sch. Dist. No. 6, Okl., 424 P.2d 963, 965; and Zimmerman v. Town of New Martinsville, 117 W.Va. 752, 188 S.E. 124, 125.